UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE FOR
THE REGISTERED HOLDERS OF
WACHOVIA BANK COMMERCIAL
MORTGAGE TRUST, COMMERCIAL
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-C28,
ACTING BY AND THROUGH ITS
SPECIAL SERVICER CWCAPITAL
ASSET MANAGEMENT LLC,

        Plaintiff,

- against -

DEXIA REAL ESTATE CAPITAL
MARKETS F/K/A ARTESIA
MORTGAGE CAPITAL
CORPORATION,

        Defendant.

------------------------------------------------- X



## OPINION AND ORDER

12 Civ. 9412

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

        Plaintiff U.S. Bank National Association, as Trustee for the

Registered Holders of Wachovia Bank Commercial Mortgage Trust, Commercial

Mortgage Pass-Through Certificates, Series 2006-C28 ("Trust"), acting by and

1

through its Special Servicer CWCapital Asset Management LLC ("CWCAM"), brings this action for breach of contract against Dexia Real Estate Capital Markets f/k/a Artesia Mortgage Capital Corporation ("Dexia").[1]  Dexia moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) on statute of limitations grounds.  For the following reasons, Dexia's motion to dismiss is denied.

## II.    BACKGROUND[2]

In October 2006, Wachovia Commercial Mortgage Securities, Inc. ("WCMS") and Dexia entered into a Mortgage Loan Purchase Agreement ("MLPA") whereby Dexia sold commercial mortgage loans ("Loan Pool") to WCMS to be deposited into a trust fund ("Trust Fund") and securitized through the issuance of mortgage pass-through certificates ("Certificates").[3]  The Certificates were to be issued pursuant to a Pooling and Servicing Agreement ("PSA") – dated the same day as the MLPA – which established Plaintiff as Co-Trustee for the

---

[1]    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 since complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.  *See* Complaint ("Compl.") ¶¶ 1-4.

[2]    As this decision involves a motion to dismiss, the facts stated below are drawn from the Complaint and the documents referenced therein, i.e., the Pooling and Service Agreement ("PSA), Ex. 1 to 2/20/13 Declaration of Gregory A. Cross, counsel to plaintiff ("Cross Decl."), and the Mortgage Loan Purchase Agreement ("MLPA"), Ex. 2 to Cross Decl.

[3]    *See* Compl. ¶ 6.

Trust.[4]  In the MLPA, Dexia made several representations and warranties ("Representations") regarding the quality and characteristics of the loans in the Loan Pool.[5]  At issue here is the Representation that each agreement executed by Dexia in connection with the loans was "a legal, valid and binding obligation . . . enforceable in accordance with its terms" for which there was no "valid offset, defense . . . or right to rescission."[6]

### A.  The Repurchase Protocol

Section 3 of the MLPA and Section 2.03 of the PSA set out the sole remedy available to the Trust for violation of any of the Representations, namely, cure or repurchase ("Repurchase Protocol").[7]  Section 2.03 of the PSA describes the Repurchase Protocol: If a breach of a Representation is discovered, and it is

---

[4]   *See id.* ¶ 7.

[5]   *See* MLPA at I-1 - I-14.

[6]   *Id.* at I-1 - I-2.  That this case involves the alleged breach of a Representation regarding the legal enforceability of the underlying Guaranty sets it apart from several other mortgage backed securities litigations cited by Dexia.  *See, e.g.*, *Structured Mortg. Trust 1997-2 v. Daiwa Finance Corp.*, No. 02 Civ. 3232, 2003 WL 548868 at *1 (S.D.N.Y. Feb. 25, 2003) (breach of factual representations regarding occupancy rate and debt service coverage ratio of property related to the loan).  *See also Nomura Asset Acceptance Corp. Alternative Loan Trust, Series 2005-S4 ex rel. HSBC Bank, USA Nat. Ass'n v. Nomura Credit & Capital, Inc.*, No. 653541/2011, slip op. at 3 (Sup Ct. N.Y. Co. May 10, 2013) (breach of factual representations regarding combined loan-to-value ratio of loan).

[7]   *See* PSA at 96-96; 98.  *See also* MLPA at 10.

determined that such breach "materially and adversely affects the value of the [loan],"[8] then the Special Servicer (here, CWCAM) must request in writing that Dexia either (i) cure the breach or (ii) repurchase the affected loan.[9]  Dexia was obligated to cure – or else repurchase the affected loan – within ninety days of receiving written notice of such breach.[10]

### B. The Loan and Guaranty

The loan that allegedly breached the Representation here was made by Dexia to MP Operating, LLC and Annex Operating, LLC ("Borrower") in the amount of $13,800,000 ("Loan"), evidenced by a Fixed Rate Note ("Note) for which the Trust became Trustee.[11]  The Loan was secured in part by an office building in Stearns County, Minnesota ("Property"); a mortgage for the Property was executed by the Borrower in favor of Dexia, and Dexia's interest in the

---

[8]   PSA at 95.  The PSA sets out a separate, general notice procedure which applies to *any* breach or defect and requires that written notice of such breach or defect is given to all parties to the PSA.  *See id*.  In other words, the cure or repurchase procedure applies only when the breach materially and adversely affects the value of the Trust, whereas the general notice procedure applies when any breach or defect is discovered.  *See id*.

[9]   *See id*.

[10]   *See id*.

[11]   *See* Compl. ¶ 8.

mortgage was assigned to the Trust.[12]  The Loan was further secured by a personal guaranty ("Guaranty") purportedly executed by a group of individuals ("Guarantors") which would hold the Guarantors personally liable for the entire amount of debt evidenced by the Note ("full-recourse provision") if certain conditions were not met with respect to the Property.[13]

### C. The Minnesota Litigation

In January 2010, the Borrowers defaulted on the Loan.[14]  The Trust discovered that the conditions contained in the Guaranty had not been met, and as such, initiated an action in Minnesota State Court ("Minnesota Litigation") seeking enforcement of the full-recourse provision of the Guaranty.[15]  In that action, the Guarantors argued – and the court agreed in July 2011 ("State Court Order") – that the Guaranty was unenforceable because the full-recourse provision was never agreed to by the Guarantors.[16]  Specifically, the Guarantors alleged that their

---

[12]     *See id.* ¶ 9.

[13]     *See id.* ¶¶ 10-11.

[14]     *See id.* ¶ 12.

[15]     *See id.* ¶¶ 13-15.

[16]     *See id.* ¶¶ 16-17.  The Complaint is vague about the content of the State Court Order.  Nonetheless, Dexia does not dispute the Trust's characterization of the Minnesota Litigation.  *See, e.g.*, Dexia's Memorandum of Law in Support of Motion to Dismiss ("Dexia Mem.") at 4.

signature pages were attached by Dexia to the version of the Guaranty which contained the full-recourse provision, but that approval of the full-recourse language was never actually given.[17] As a result, the Trust was unable to enforce the Guaranty although the conditions triggering the full-recourse provision had been met,[18] and the Loan is now in default and cannot be sold for the amount of the mortgage loan.[19]

### D. The Present Action

The Trust argues that Dexia breached the Representations[20] by executing a Guaranty that was not "enforceable in accordance with its terms."[21] Pursuant to Section 3 of the MLPA and Section 2.03 of the PSA, on September 29, 2011, CWCAM gave notice to Dexia of the breach and demanded either cure of the breach or repurchase of the Loan,[22] i.e., the exclusive remedies available for breach of the Representations.[23] Dexia did not cure the alleged breach or repurchase the

---

[17] *See* Compl. ¶¶ 16-17.

[18] *See id.* ¶ 24.

[19] *See id.* ¶ 40. The Complaint does not clarify the distinction, if any, between the Loan and the "mortgage loan." *Id.*

[20] *See id.* ¶ 36.

[21] MLPA at I-2.

[22] *See id.* ¶ 25.

[23] *See id.* ¶ 32.

loan within ninety days,[24] and about one year later the Trust filed this action.[25]

## III. LEGAL STANDARD

### A. Motion to Dismiss Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor."[26] The court evaluates the sufficiency of a complaint under the "two-pronged approach" advocated by the Supreme Court in *Ashcroft v. Iqbal*.[27] First, "[a] court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[28] "Threadbare recitals of the elements of a cause of action,

---

[24] *See id*. ¶ 31.

[25] *See id*. at 12. The Complaint is dated and designated as filed December 27, 2012. However, the Trust's Opposition Memorandum asserts that the Complaint was filed December 12, 2012. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Opp. Mem.") at 6. This discrepancy is irrelevant for the purposes of the statute of limitations since Dexia argues that the statute of limitations began running in October 2006 and therefore expired in October 2012. *See* Dexia Mem. at 4.

[26] *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quotation marks omitted).

[27] 556 U.S. 662, 679 (2009).

[28] *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 664). *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[29] Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[30]

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[31] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32] Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[33] For the purposes of a 12(b)(6) motion, ". . . a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[34]

---

[29] *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[30] *Id.* at 670. *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[31] *Twombly*, 550 U.S. at 564.

[32] *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

[33] *Id.* (quotation marks omitted).

[34] *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

## IV.   APPLICABLE LAW

### A.   Breach of Contract Under New York Law

"Under New York law, the elements of a cause of action for breach of contract are (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach."[35] Under New York law, a plaintiff "is required only to provide defendants with a 'short, plain notice' of the claims against them pursuant to Rule 8."[36] Nevertheless, the complaint must provide "specific allegations" as to the contract's parties, terms, and breached provisions.[37]

### B.   Statute of Limitations

Breach of contract claims are subject to a six year statute of limitations.[38] A breach of contract claim accrues at the time of breach, even if plaintiff does not suffer damages until a later date.[39] "[W]here a demand is

---

[35]   *Beautiful Jewellers Private Ltd. v. Tiffany & Co.*, 438 Fed. App'x 20, 21-22 (2d Cir. 2011).

[36]   *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) (citations omitted).

[37]   *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 173 (S.D.N.Y. 2009) (citations omitted).

[38]   *See* N.Y. C.P.L.R. § 213(2).

[39]   *See Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.S.2d 399, 402 (1993).

necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed from the time when the right to make the demand is complete."[40] In other words, the statute of limitations "runs from the time when the party making the demand first becomes *entitled* to make the demand, and not from the time the actual demand is made."[41] A plaintiff cannot "put off the running of the Statute of Limitations indefinitely by waiting an unreasonable time to make the demand."[42]

## V. DISCUSSION

Dexia argues that dismissal is warranted because any breach of the Representations regarding the Guaranty existed at the time the MLPA and PSA were entered into in October 2006, and therefore the Trust was entitled to make the repurchase demand at that time.[43] As such, Dexia maintains that the statute of

---

[40] *Parker v. Town of Clarkstown*, 629 N.Y.S.2d 787, 788 (2d Dep't 1995).

[41] *Woodlaurel, Inc. v. Wittman*, 606 N.Y.S.2d 39, 40 (2d Dep't 1993) (emphasis added).

[42] *ACE Sec. Corp. v. DB Structured Products, Inc.*, No. 650980/2012, 2013 WL 1981345 at *4 (citing *Snyder v. Town Insulation, Inc.*, 81 N.Y.2d 429, 435 (1993)).

[43] *See* Dexia Mem. at 3-4. In its argument, Dexia relies on an unreported 2003 district court case also involving mortgage backed securities. *See Structured Mortg. Trust 1997-2 v. Daiwa Finance Corp.*, No. 02 Civ. 3232, 2003 WL 548868 (S.D.N.Y. Feb. 25, 2003). The court there held that the statute of limitations runs from the execution of the contract because the claim accrues when

limitations began running in October 2006 and expired six years later, before the Trust filed this action in December 2012.[44] The Trust responds that it was only entitled to demand cure or repurchase once the breach of the Representations materially and adversely affected the value of the Loan – which, the Trust contends, occurred as a result of the State Court Order entered in July 2011 finding the Guaranty legally unenforceable.[45]

Because Dexia ignores the distinction between the date by which a breach of the Representations may have existed with the date by which the Trust was entitled to demand cure or repurchase, its argument is unavailing. The terms of the PSA make clear that the mere existence of a breach or defect does not

---

the wrong is committed, and not when the plaintiff discovers it. *See id*. at *2. There, the relevant PSA contained "no language . . . to support plaintiffs' position that they were barred until March 1999 from making [the repurchase demand]." *Id*. Rather, plaintiffs were entitled to make a repurchase demand once the loan at issue defaulted, more than six years prior to filing. *See id*. Moreover, after demand to repurchase was refused, no further action was taken for nearly three years before suit was filed. *See id.* at *1. Dexia also brings to this Court's attention a recent unreported decision, *Nomura Asset Acceptance Corp. Alt. Loan Trust, Series 2005-S4 ex rel. HSBC Bank, USA Nat'l Ass'n v. Nomura Credit & Capital, Inc.*, No. 653541/2011, slip op. (Sup. Ct. N.Y. Co. May 10, 2013), which held that the statute of limitations runs from the date the representations are made. This case is factually distinguishable from *Nomura*. In that case, plaintiff did not argue that its right to demand repurchase only existed as of a later date, but rather argued that the statute of limitations did not begin to run until defendant refused to repurchase the loan at issue. *See Nomura*, slip op. at 8.

[44]   *See* Dexia Mem. at 4.

[45]   *See* Opp. Mem. at 5-6.

automatically entitle the Trust to demand cure or repurchase under the Repurchase Protocol. Section 2.03 establishes one procedure that applies when any document defect or breach of the Representations is *discovered* – *i.e.*, the party must give written notice of such breach or defect to all parties to the PSA – and a separate procedure which applies only to a breach that "materially and adversely affects the value of the affected Mortgage Loan" – *i.e.*, the party must notify the Special Servicer, who in turn makes the demand for cure or repurchase of the affected loan.[46] The Trust is not entitled to demand cure or repurchase merely because a breach of the Representation exists; in order for the Special Servicer to demand cure or repurchase, the material and adverse effect condition must be met.[47] Based on these facts, this case is distinguishable from *Hahn Automotive Warehouse, Inc. v. American Zurich Insurance Co.*,[48] where the defendant company acknowledged that it had the right to demand payment under a contract years earlier, but inadvertently failed to make such demand.[49]

        The Complaint pleads facts sufficient to raise a reasonable inference that the breach of the Representation did not materially and adversely affect the

---

[46]     PSA at 95. *See also supra* note 8.

[47]     *See id.* The Trust does not argue otherwise. *See* Opp. Mem. at 5.

[48]     18 N.Y.3d 765 (2012).

[49]     *See id.* at 771.

value of the Loan until the Guaranty was deemed unenforceable at the resolution of the Minnesota Litigation, *i.e.*, in July 2011. Thus, under the terms of the PSA and MLPA, while a breach of the Representations could have existed in October 2006, the Trust was not entitled to demand cure or repurchase until July 2011.

## VI. CONCLUSION

In light of the foregoing, Dexia's motion to dismiss is denied. The Clerk of the Court is directed to close this motion (Dkt. No. 6). A status conference in this case is scheduled for Friday, June 14, 2013 at 3:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         June 6, 2013

- Appearances -

**For Plaintiff:**

Michael C. Hartmere, Esq.
Venable LLP
Rockefeller Center
1270 Avenue of the Americas, 25th Floor
New York, NY 10020
(212) 307-5500

Gregory A. Cross, Esq.
Heather Deans Foley, Esq.
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, MD 21202
(410) 244-7742


**For Defendant:**

David D. Ferguson, Esq.
Polsinelli Shughart PC
700 W. 47 Street, Suite 1000
Kansas City, MO 64112
(816) 360-4311

G. Edgar James, Esq.
Polsinelli Shughart PC
Twelve Wyandotte Plaza
120 W. 12th Street
Kansas City, MO 64105
(816) 374-0509