UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE FOR
THE REGISTERED HOLDERS OF
WACHOVIA BANK COMMERCIAL
MORTGAGE TRUST, COMMERCIAL
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-C28,
ACTING BY AND THROUGH ITS
SPECIAL SERVICER CWCAPITAL
ASSET MANAGEMENT LLC,

               **Plaintiff,**

    - against -

DEXIA REAL ESTATE CAPITAL
MARKETS F/K/A ARTESIA
MORTGAGE CAPITAL
CORPORATION,

               **Defendant.**

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/9/14

**OPINION AND ORDER**

**12-cv-9412**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

       Plaintiff U.S. Bank National Association, as Trustee for the

Registered Holders of Wachovia Bank Commercial Mortgage Trust, Commercial

Mortgage Pass-Through Certificates, Series 2006-C28 ("the Trust"), acting by and

through its Special Servicer CWCapital Asset Management LLC ("CWCAM"), brings this diversity breach of contract suit against Dexia Real Estate Capital Markets f/k/a Artesia Mortgage Capital Corporation ("Dexia"). The parties cross-move for summary judgment. For the following reasons, the Trust's motion for summary judgment is GRANTED and Dexia's motion for summary judgment is DENIED.

## II.    BACKGROUND

### A.    The Contracts

In September 2006, Dexia made a $13,800,000 commercial mortgage loan (the "Marketplace Loan") to MP Operating, LLC and Annex Operating, LLC (collectively, the "Borrowers").[1] The Marketplace Loan is evidenced by a promissory note and secured by a mortgage against an office building located in Stearns County, Minnesota.[2] Four individuals (the "Guarantors") "were purported to have executed a guaranty in favor of Dexia and its successors and assigns" in connection with the Marketplace Loan (the "Guaranty").[3] Section 2(b)(iv) of the Guaranty (the "Full-Recourse Provision") provides that the Guarantors shall be

---

[1]     *See* Plaintiff's Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment ("Pl. 56.1 Statement") ¶ 1.

[2]     *See id.* ¶ 2.

[3]     *Id.* ¶ 7.

personally liable for the entire amount of the indebtedness evidenced by the promissory note if certain conditions were not met with respect to the Stearns County property.[4]

On October 1, 2006, Dexia and Wachovia Commercial Mortgage Securities ("WCMS") entered into a Mortgage Loan Purchase Agreement (the "MLPA").[5] "Pursuant to the MLPA, Dexia sold commercial mortgage loans . . . to [WCMS] to be deposited into the Trust and securitized through the issuance of mortgage pass-through certificates."[6]

Dexia made several representations and warranties regarding the loans sold to WCMS, including the Marketplace Loan. Representation 5 states, in relevant part, that "[e]ach related . . . agreement executed by the related Mortgagor in connection with [each] Mortgage Loan is a legal, valid and binding obligation of the related Mortgagor . . . enforceable in accordance with its terms."[7]

---

[4]     *See* 9/25/06 Limited Recourse Obligations Guaranty, Exhibit ("Ex.") 1 to the 4/1/14 Declaration ("Decl.") of Colleen M. Mallon, counsel for plaintiff, ¶ 2(b)(iv).

[5]     *See* Pl. 56.1 Statement ¶ 11.

[6]     *Id*. ¶ 12.

[7]     10/1/06 Mortgage Loan Purchase Agreement ("MLPA"), Ex. 3 to Mallon Decl., Schedule I (General Mortgage Representations and Warranties), at I-2.

Representation 6 states, in relevant part, that "[a]s of the date of its origination, there was no valid offset, defense, counterclaim, abatement or right to rescission with respect to any of the related . . . agreements executed in connection" with each Mortgage Loan. [8]

On the same day, WCMS, the Trust, Wachovia Bank National Association (the "Master Servicer"), and CWCAM (the "Special Servicer"), entered into a Pooling and Servicing Agreement ("PSA"), in which WCMS assigned its "rights, title and interest" to several mortgage loans, as well as its rights under "Sections 2, 3, 9, 10, 11, 12, 13, 14, 16, 17, 18 and 19 of each of the [corresponding] Mortgage Loan Purchase Agreements" to the Trust.[9] The Marketplace Loan and Guaranty were assigned to the Trust as part of the PSA.[10]

Section 2.03 of the PSA and Section 3 of the MLPA provide the sole remedy available for document defects and breaches of representations and warranties.[11] Section 2.03(a) of the PSA provides that

---

[8]    *Id.*

[9]    10/1/06 Pooling and Servicing Agreement ("PSA"), Ex. 2 to Mallon Decl., § 2.01(a).

[10]    *See* Pl. 56.1 Statement ¶¶ 9-10.

[11]    A "Document Defect" is defined as "any document or documents constituting a part of a Mortgage File . . . [that] has not been properly executed, is missing (beyond the time period required for its delivery hereunder), contains

> [p]romptly upon becoming aware of any 'Document Defect' or 'Breach,' . . . any party [who]. . . determines that such Document Defect or Breach materially and adversely affects the value of the affected Mortgage Loan, the interest of the Trust Fund therein or the interests of any Certificateholder . . . shall notify the Master Servicer of such determination and promptly after receipt of such notice, the Master Servicer [or Special Servicer], shall request in writing . . . that the applicable Mortgage Loan Seller, not later than ninety (90) days from receipt of such written request . . . (i) cure such Document Defect or Breach . . . in accordance with Section 3(c) of the applicable [MLPA] [or] (ii) repurchase[s] the affected Mortgage Loan . . . in accordance with Section 3(c) of the related [MLPA].[12]

A Document Defect is "considered to materially and adversely affect" the value of the loan, interest of the Trust, or interest of any Certificateholder only when "the document with respect to which the Document Defect exists is required in connection with an imminent enforcement of the mortgagee's rights or remedies under the related Mortgage Loan."[13]

### B.   Minnesota State Court Litigation

"The Marketplace Loan went into default in January 2010 as a result

---

information that does not conform in any material respect with the corresponding information set forth in the Mortgage Loan Schedule, or does not appear to be regular on its face."  A "Breach" is defined as "a breach of any representation or warranty relating to any Mortgage Loan set forth in the applicable Mortgage Loan Purchase Agreement."  PSA 2.03(a).

[12]    *Id.*

[13]    *Id.  Accord* MLPA, Section 3(c).

5

of [the] Borrowers' failure to pay the required monthly debt service due in that month."[14]  After the loan was transferred to CWCAM for special servicing in March 2010, the Special Servicer determined that "the debt service coverage ratio, effective gross income, and physical occupancy rate requirements in the Guaranty were not met, thereby triggering the Guarantors' liabilities under the Full-Recourse Provision."[15]  "On September 7, 2010, the Trust filed an action in Stearns County, Minnesota, seeking, among other things, to foreclose upon the lien of the Mortgage, appointment of a receiver, and to enforce the Full-Recourse Provision of the Guaranty."[16]

---

[14]     Pl. 56.1 Statement ¶ 34.

[15]     *Id.* ¶¶ 35-36.

[16]     *Id.* ¶ 37.  The facts that follow are based largely on the 4/1/14 declaration of Heather Deans Foley, counsel for the Trust in this action as well as the Stearns County case.  While Dexia does not contest the truth of any of the following facts, it contends that this testimony should not be considered because the Trust did not list Foley as a potential witness in its Rule 26(a) disclosures and the Trust has not been able to depose Foley or her law firm, Venable.  But Dexia has always known that Foley would be a potential witness and has twice attempted to depose her, or a representative from Venable.  Both times, the Trust objected on the basis of attorney-client privilege and I upheld those objections.  *See* Transcript of 11/19/13 and 3/10/14 Conferences.  The Foley declaration merely summarizes the procedural history of the Stearns County litigation, including the arguments put forth during motion practice and the substance of the court's decisions, all of which is a matter of public record.  Foley has not waived attorney-client privilege, nor is there any harm or prejudice in considering her testimony on these summary judgment motions.

"The Guarantors responded to the Trust's complaint in the Stearns County Litigation by raising as an affirmative defense that they had not executed the Guaranty with the Full-Recourse Provision and that it was therefore unenforceable."[17]  In November 2010, the Guarantors moved for summary judgment, claiming that they executed a limited form of the guaranty that did not include the Full-Recourse Provision.  The Guarantors contended that Best & Flanagan, the law firm that served as Dexia's closing counsel, "had taken the Guarantors' signature page from the more limited form of the guaranty and attached it to the form of the Guaranty containing the Full-Recourse Provision without their consent."[18]  After the completion of discovery, the Trust amended its complaint to add an alternative theory of contract reformation, arguing that the Guaranty should be reformed to incorporate the Full-Recourse Provision because the Guarantors had ratified the Full-Recourse Provision through later actions.[19]

On July 11, 2011, the Stearns County trial court held that the Full-Recourse Provision was unenforceable because there was insufficient evidence that the Guarantors "had accepted the offer of a Full-Recourse Guaranty or that they

---

[17]    Pl. 56.1 Statement ¶ 40.

[18]    *Id.* ¶¶ 41-42.

[19]    *See id.* ¶ 48.

intended to ratify [Dexia's closing counsel's] modification to the original Alternative Guaranty."[20]  In a separate order dated September 21, 2011, the court held that the rest of the Guaranty was enforceable against the Guarantors because they admitted to signing the more limited guaranty, but granted summary judgment in favor of the Guarantors on the Trust's reformation claim.[21]

In August 2012, the Guarantors sued Dexia and its closing counsel in

---

[20]     *U.S. Bank Nat'l Ass'n v. MP Operating, LLC*, No. 73-cv-10-7965, Order (Minn. Dist. Ct. Jul. 11, 2011), Ex. 7 to Mallon Decl., at 14.

[21]     *See* Pl. 56.1 Statement ¶ 62.  On July 1, 2014, the Stearns County court issued an order denying Best & Flanagan's motion to intervene.  Best & Flanagan sought to intervene in the Stearns County case, three years after partial summary judgment was granted in favor of the Guarantors, arguing that important documents supporting the reformation claim were not made part of the summary judgment record.  The Stearns County court denied the motion to intervene, but remarked that "[t]he summary judgment record was woefully incomplete and that summary judgment would not have been granted if the information offered in support of the motion to intervene had been part of the summary judgment record." *U.S. Bank Nat'l Ass'n v. MP Operating, LLC*, No. 73-cv-10 7965, Order Denying Intervention (Minn. Dist. Ct. Jul. 1, 2014), Ex. A to 7/3/14 Letter from G. Edgar James, counsel for Dexia, to the Court ("7/1/14 Stearns County Order"), at 3-4. Specifically, the court said that "[t]he summary judgment record did not include the Loan Application [and] Commitment Letter, both of which confirm the [Guarantors'] agreement to the full recourse guarantee, or at least, raise genuine issues of material fact as to that point." *Id.* at 4, n. 3.  However, as the Trust points out, and Dexia concedes, the Commitment Letter, which references the Loan Application, was, in fact, part of the summary judgment record.  *See* 7/8/14 Letter from Gregory A. Cross, counsel for the Trust, to the Court, at 2 n. 3; Pl. 56.1 Statement ¶ 53; Dexia's Counter-Statement to Pl. 56.1 Statement, ¶ 53.  Thus, the court's statements in the July 1, 2014 order about the completeness of the summary judgment record are premised, at least in part, on a factual misstatement.

Hennepin County, Minnesota for fraud and negligence relating to the swapping of the signature page.[22]  Dexia filed a counterclaim against the Guarantors for contract reformation and a cross-claim against its closing counsel, alleging malpractice.[23] The Guarantors moved to dismiss Dexia's counterclaim, arguing that the reformation argument was barred by res judicata and collateral estoppel.[24]  On March 20, 2014, the Hennepin County court granted the Guarantors' motion to dismiss, holding that "[t]he related doctrines of res judicata and collateral estoppel prevent Dexia from relitigating legal issues that were already decided . . . in the Stearns County Litigation."[25]

## C.    Demand and Suit

On September 29, 2011, the Trust wrote to Dexia stating that as a result of the Stearns County trial court orders, "the form of the Guaranty maintained in the Mortgage File was never properly executed by the Guarantors, is not a valid and binding contract . . . and is unenforceable as a full recourse

---

[22]     Pl. 56.1 Statement ¶ 72.

[23]     *See id.* ¶ 73.

[24]     *See id.* ¶ 75.

[25]     *Abel v. Yip*, No. 27-cv-13-9898, Order Granting Motion, (Minn. Dist. Ct. Mar. 20, 2014), Ex. 11 to Mallon Decl., at 7.

9

guaranty" and Dexia has breached its representations and warranties.[26]  The letter

requested that Dexia cure the document defect or repurchase the loan in accordance

with Section 3 of the MLPA and Section 2.03 of the PSA.[27]  "Dexia refused to

purchase the Loan."[28]  The Trust appealed the July and September 2011 orders on

July 9, 2012, but withdrew its appeal with prejudice on November 13, 2012, before

it had been briefed.[29]  The Marketplace Loan remains outstanding and is in

default.[30]  The Trust filed this action on December 27, 2012.

## III.    LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate "only where, construing all the

evidence in the light most favorable to the non-movant and drawing all reasonable

inferences in that party's favor, there is 'no genuine issue as to any material fact

and . . . the movant is entitled to judgment as a matter of law.'"[31]  "A fact is

material if it might affect the outcome of the suit under the governing law, and an

---

[26]     9/29/11 letter from Gregory Cross, counsel for the Trust, to Artesia
Mortgage Capital Corporation [Dexia's former name], Ex. 8 to Mallon Decl., at 5.

[27]     *See id.*

[28]     Pl. 56.1 Statement ¶ 68.

[29]     *See id.* ¶¶ 63-64.

[30]     *See id.* ¶ 84.

[31]     *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 692
(2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (other quotations omitted).

issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[32]

"[T]he moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle him to judgment as a matter of law."[33]  "When the burden of proof at trial would fall on the non-moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim."[34]  The burden then "shifts to the non[-]moving party to present specific evidence showing a genuine dispute."[35]  This requires "'more than simply show[ing] that there is some metaphysical doubt as to the material facts,'"[36] and the non-moving party cannot "rely on conclusory allegations or unsubstantiated speculation."[37]

In deciding a motion for summary judgment, "[t]he role of the court is not to

---

[32]    *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (quotations and alterations omitted).

[33]    *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citations omitted).

[34]    *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

[35]    *Id.*

[36]    *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[37]    *Id.*

resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[38]  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[39]

## IV.   APPLICABLE LAW

### A.   Breach of Contract

#### 1.   Elements

The elements of breach of contract under New York law[40] are well established: "(1) the existence of a contract between [the plaintiff] and th[e] defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by th[e] defendant; and (4) damages to the plaintiff caused by th[e] defendant's breach."[41]

#### 2.   Statute of Limitations

---

[38]   *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[39]   *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[40]   The MLPA and PSA are governed by New York law.  *See* MLPA § 15 and PSA § 11.04.

[41]   *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

Breach of contract claims are subject to a six year statute of limitations.[42]  A breach of contract claim accrues at the time of breach, even if plaintiff does not suffer damages until a later date.[43]

"[W]here a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed from the time when the right to make the demand is complete."[44]  "Under New York law, claims which are subject to pre-suit cure or demand requirements accrue when the underlying breach occurs, not when the demand is subsequently made or refused," unless a demand is a substantive predicate to a suit.[45]

A substantive demand is an "essential [legal] element of the plaintiff's cause of action," such as for example, replevin.[46]  When a demand requirement is considered substantive,  the statute of limitations does not begin to run until

---

[42]    *See* Civil Practice Law and Rules ("CPLR") § 214(3).

[43]    *See Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993).

[44]    CPLR § 206(a)

[45]    *Deutsche Alt–A Securities Mortg. Loan Trust. Series 2006–OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488, 499 (S.D.N.Y. 2013).

[46]    *Continental Cas. Co. v. Stronghold Ins. Co.*, 77 F.3d 16, 21 (2d Cir. 1996). For example, "[d]emand upon, and refusal of, the person in possession of the chattel to return it [are] essential elements of a cause of action in replevin." *In re Peters*, 821 N.Y.S.2d 61, 65 (2006).

demand is made and refused.[47]  But where a demand is merely procedural, "the time within which the action must be commenced shall be computed from the time when the *right to make the demand* is complete," that is, from the date of the breach.[48]  Thus, a party "'may not extend the accrual date of the statute of limitations simply by delaying its demand for payment [because a] cause of action for breach of contract accrues when the party making the claim possesses a *legal right* to demand payment.'"[49]

### 3.   Condition Precedent

"Under New York law, a condition precedent is an act or event which must occur before another party's duty to perform its promise arises."[50] "Conditions are not favored under New York law, and in the absence of unambiguous language, a condition will not be read into the agreement."[51]  In cases

---

[47]     *See Continental*, 77 F.3d at 21.  *See also* CPLR § 206(a).

[48]     *Parker v. Town of Clarkstown*, 629 N.Y.S.2d 787, 788 (2d Dep't 1995) (emphasis added).

[49]     *Lehman XS Trust, Series 2006–4N ex rel. U.S. Bank, Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc.*, No. 13 Civ. 4707, 2014 WL 108523, at *3 (S.D.N.Y. Jan. 10, 2014) (quoting *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F. Supp. 2d 1189, 1194 (W.D. Wash. 2011)) (emphasis in original).

[50]     *LaSalle Bank Nat. Assoc. v. Citicorp Real Estate, Inc*., No. 02 Civ. 7868, 2003 WL 21671812, at *3 (S.D.N.Y. July 16, 2003).

[51]     *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1100 (2d Cir. 1992).

14

involving notice provisions and cure and repurchase obligations, courts have held that "the sending of a notice to cure [is] a condition precedent to the repurchase obligation where the repurchase provision state[s]" that the repurchase obligation is triggered "'following the expiration of the related cure period.'"[52]  But courts have declined to find that a notice requirement is a condition precedent when the repurchase can be triggered by something other than a notice,[53] or where the repurchase provisions and notice provisions "do not expressly refer to each other."[54]

### 4.    Prior Material Breach

"[A] party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously,

---

[52]     *BNY Mellon Trust Co. v. Morgan Stanley*, No. 11 Civ. 0505, 2013 WL 3146824, at *17 (S.D.N.Y. Jun. 19, 2013) (quoting *Assured Guaranty Municipal Corp. v. DB Structured Prods., Inc.*, 927 N.Y.S.2d 880 (Sup. Ct. N.Y. Co. 2011)).

[53]     *See Trust for Certificate Holders of Merrill Lynch Mortg. Passthrough Certificates Series 1999–C1 v. Love Funding Corp.*, No. 04 Civ. 9890, 2005 WL 2582177, at *7 (S.D.N.Y. Oct. 11, 2005) (finding that the notice provision was not a condition precedent where obligation to cure or repurchase could be triggered "within sixty (60) days of either discovery by or notice to [Seller] of any Breach of a representation or warranty").

[54]     *LaSalle Bank*, 2003 WL 21671812, at *3.

15

where that party has committed a material breach."[55]  A breach is material if it "go[es] to the root of the agreement between the parties [and] is so substantial that it defeats the object of the parties in making the contract."[56]

### B.    Breach of Covenant of Good Faith and Fair Dealing

Under New York law, every contract contains an implied promise that "neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract."[57]  A breach of the covenant is "merely a breach of the underlying contract," and "cannot be used to create new contractual rights between the parties."[58]

### C.    Collateral Estoppel and Res Judicata[59]

"Res judicata and collateral estoppel are related doctrines. Fundamental to both doctrines is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be

---

[55]    *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007).

[56]    *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997) (quotation marks omitted).

[57]    *M/A-COM Sec. Corp. v. Galesi,* 904 F.2d 134, 136 (2d Cir. 1990).

[58]    *Cohen v. Elephant Wireless, Inc.,* No. 03 Civ. 4058, 2004 WL 1872421, at *11 (S.D.N.Y. Aug. 19, 2004) (quotation marks and citations omitted).

[59]    The parties agree that Minnesota law governs the issue of res judicata and collateral estoppel.

16

disputed in a subsequent suit between the same parties or their privies.'"[60] "The

doctrine of res judicata bars a claim where litigation on a prior claim involved the

same cause of action, where there was a judgment on the merits, and where the

claim involved the same parties or their privies."[61]  "Collateral estoppel . . . applies

to specific legal issues that have been adjudicated and is also commonly and

accurately known as 'issue preclusion.'"[62]  "The issue on which collateral estoppel

is to be applied must be the same as that adjudicated in the prior action and it must

have been necessary and essential to the resulting judgment in that action."[63]

> Collateral estoppel may be applied when "(1) the issue was
> identical to one in a prior adjudication; (2) there was a final
> judgment on the merits; (3) the estopped party was a party or in
> privity with a party to the prior adjudication; and (4) the estopped
> party was given a full and fair opportunity to be heard on the
> adjudicated issue."[64]

"A plaintiff uses offensive collateral estoppel when he or she 'seek[s]

---

[60]     *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004) (quoting *Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 902 (Minn. 1984)).

[61]     *Wilson v. Commissioner of Revenue*, 619 N.W.2d 194, 198 (Minn. 2000).

[62]     *Hauschildt*, 686 N.W.2d at 837.

[63]     *Id*.

[64]     *State v. Lemmer*, 736 N.W.2d 650, 659 (Minn. 2007) (quoting *Willems v. Commissioner of Pub. Safety*, 333 N.W.2d 619, 621 (Minn. 1983)).

to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff.'"[65] Courts have expressed concern that offensive collateral estoppel may be unfair to defendants, but have permitted its use in the absence of unfairness.  Offensive collateral estoppel may be considered unfair in four circumstances – 1) if the second proceeding was unforeseeable; 2) if the judgment relied on is inconsistent with previous judgments in favor of defendant; 3) if different procedures apply in the subsequent action; and 4) if plaintiff could have easily joined in the earlier action.[66]

Privity "'expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties.'"[67] "Privies to a judgment are those who are so connected with the parties in estate or in blood or in law as to be identified with them in interest, and consequently to be affected with them by the litigation."[68] The

---

[65]     *Falgren v. State Board of Teaching*, 545 N.W. 2d 901, 906 (Minn. 1996) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)).

[66]     *See id*. at 906-07.  *See also Parklane*, 439 U.S. at 329.

[67]     *Rucker v. Schmidt*, 794 N.W.2d 114, 118 (Minn. 2011) (quoting *Margo–Kraft Distribs., Inc. v. Minneapolis Gas Co.*, 200 N.W.2d 45, 47 (Minn. 1972)).

[68]     *Id*.

Supreme Court of the United States recently held that "nonparty preclusion may be justified based on a variety of pre-existing substantive legal relationship[s] between the person to be bound and a party to the judgment . . . includ[ing], but . . . not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor."[69]

## V.   DISCUSSION

### A.   The Trust's Suit Is Timely

Dexia moves for summary judgment because the Trust's claims are time-barred.[70]  Dexia argues that "[b]ecause the representations on which [the Trust's] claims are based were made by Dexia in the [MLPA]" those claims accrued on the date the MLPA was executed – October 1, 2006 – making the December 27, 2012 complaint untimely.[71]

Dexia correctly argues that the demand requirement in Section 2.03 of the PSA and Section 3(c) of the MLPA is procedural, not substantive, and thus, has

---

[69]     *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (quotation omitted).

[70]     *See* 4/1/14 Dexia Real Estate Capital Markets' Memorandum of Law in Support of Its Motion for Summary Judgment ("Dexia Mem."), at 8.

[71]     *Id*.

19

no bearing on the accrual date.[72]  But there is no *per se* rule that breach of

representations and warranties occurs at the time of closing and accrues on that

date.  Rather, the claim accrues when all of the elements that establish a breach –

as defined in the contract – have occurred and plaintiff has a *legal right* to make

the demand.[73]

      Here, the PSA and MLPA clearly state that a breach must "materially

and adversely affect the value of the affected Mortgage Loan" or the interests of

the Trust before the Trust is entitled to make a demand.[74]  The Trust alleges that

Dexia breached Representations 5 and 6 of the MLPA, which represented that each

agreement within the relevant loan file is a "legal, valid and binding obligation . . .

enforceable in accordance with its terms" and that there is no valid defense or right

---

[72]    *See Greenpoint*, 2014 WL 08523, at *4 (holding that a procedural demand is "a pre-suit remedial provision that is neither an element of the breach of contract claim, nor grounds for a separate breach of contract claim" and thus, cannot serve to delay the accrual); *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 977 N.Y.S.2d 229, 231 (1st Dep't 2013) (reversing trial court's ruling that plaintiffs' claim did not accrue until defendants failed to timely cure or repurchase defective mortgage loans).

[73]    *See Greenpoint*, 2014 WL 08523, at *4 ("The alleged underlying breach occurred when the Trust experienced a 'material and adverse' effect."); *Lehman XS Trust, Series 2006-GP2 ex rel. U.S. Bank, Nat'l Ass'n v. Greenpoint Mortg. Funding Inc.,* No. 12 Civ. 7935, 2014 WL 1301944, at *4 (S.D.N.Y. Mar. 31, 2014) ("[A] trustee could not state a claim for material breaches that had not yet occurred.").

[74]    PSA § 2.03(a); MLPA § 3(c).

to rescission "with respect to any" such agreement.[75]  Because the Full-Recourse Provision of the Guaranty was never legally enforceable, these representations were breached on the closing date.

But as I previously held when denying Dexia's motion to dismiss, "[t]he Trust is not entitled to demand cure or repurchase merely because a breach of the Representation exists; in order for the Special Servicer to demand cure or repurchase, the material and adverse effect condition must be met."[76]  Here, the breach is based on a Document Defect, defined in the contracts as "any document . . . [that] has not been properly executed."[77]  The contracts further specify that a Document Defect is not "considered to materially and adversely affect" the value of the loan or the interests of the Trust, "*unless* the document with respect to which the Document Defect exists is required in connection with an imminent enforcement of the mortgagee's rights or remedies under the related Mortgage Loan."[78]

Dexia argues that this language "is merely part of the *procedural*

---

[75]     MLPA, at I-2.

[76]     *U.S. Bank, Nat'l. Ass'n v. Dexia Real Estate Capital Mkts.,* 959 F. Supp. 2d 443, 448 (S.D.N.Y. 2013).

[77]     PSA § 2.03(a); MLPA § 3(c).

[78]     *Id*. (emphasis added).

demand protocol[,]  not a *substantive* element of a breach of contract action . . . and therefore cannot serve to extend the statute of limitations."[79]  I disagree.  A "breach" is an element of a breach of contract action.  The elements of an *actionable* breach, however, are defined by the contract and the accrual period begins when those elements are satisfied.  The "material and adverse" effect is an element of the breach – the Trust had no legal right to make a demand until it occurred.

The contracts specifically state that a Document Defect does not have a "material and adverse" effect until the document is needed "in connection with an imminent enforcement of the mortgagee's rights or remedies."[80]  Even if the Guaranty was defective on October 1, 2006, it did not "materially and adversely affect" the value of the loan or interests of the Trust until it was needed to enforce the Full-Recourse Provision, or in January 2010, when the Marketplace Loan went into default.[81]  Thus, the Trust's suit, filed on December 27, 2012, is timely.

---

[79]     Dexia Mem. at 15 (emphasis in original).

[80]     PSA § 2.03(a); MLPA § 3(c).  Dexia argues that "this case does not involve a Document Defect and the 'required for imminent enforcement' language is inapplicable" because the Trust has sued for breach of representations and warranties.  Dexia Mem. at 15.  But this is implausible – the basis of the breach is the Document Defect in the Guaranty.

[81]     The Trust argues that there was no material and adverse effect until the Stearns County court ruled that the Full-Recourse Provision of the Guaranty

**B.     The Trust Performed Under the Contract**

**1.     Notice Requirement**

Dexia also moves for summary judgment on the ground that the Trust "fail[ed] to meet the condition precedent of timely notifying Dexia of [its] demand for cure."[82]  Dexia argues that the Trust knew that the Guarantors claimed the Full-Recourse Provision was unenforceable in May 2010, but "waited more than 16 months to send its cure demand to Dexia . . . functionally depriv[ing] Dexia of any possibility of curing the alleged breaches."[83]  The Trust responds that there is no prompt notice requirement in the MLPA, or that, in the alternative, such a requirement was satisfied by the September 29, 2011 notice.

Section 3(c) of the MLPA outlines Dexia's obligations upon receiving "written notice of a Document Defect or Breach pursuant to Section 2.03(a) of the Pooling and Servicing Agreement."  Section 2.03(a) states that "[p]romptly upon

---

was unenforceable in July 2011.  *See* Plaintiff's Memorandum of Law in Support of Its Motion for Summary Judgment, at 14.  But the Stearns County court ruled that the Full-Recourse Provision had *always* been unenforceable because the Guarantors only signed a more limited version of the Guaranty.  The document including the Full-Recourse Provision was defective at the time it was signed; however, as per the contract, the defect only had a material and adverse effect on the value of the loan when it was needed to enforce the mortgagor's rights following the borrowers' default.

[82]     Dexia Mem. at 17.

[83]     *Id*.

23

becoming aware of any Document Defect or Breach" and determining that the defect or breach materially and adversely affects the value of a loan or the interest of the Trust, the party that discovers the defect or breach "shall notify the Master Servicer of such determination." "Promptly after receipt of such notice," the Master or Special Servicer, "shall request in writing" that the Seller cure or repurchase the loan.[84]

In *LaSalle Bank National Association v. Citicorp Real Estate*, the court declined to find a similar provision to be a condition precedent. In that case, the provision stated that "[u]pon discovery by any of the parties hereto of a breach of any of . . . the representations or warranties set forth . . . above which materially and adversely affects the value of [the loan] . . . the party discovering such a breach shall give prompt written notice to each of the parties hereto."[85] The court concluded that "[a]lthough the prompt-notice provision [includes] the word 'upon,' in this context it does not overcome the preference against finding conditions precedent" in the absence of unambiguous language.[86] "Unambiguous language indicating a condition include the terms 'on condition that,' 'provided that,' 'if,'

---

[84]   PSA § 2.03(a).

[85]   *LaSalle Bank*, 2003 WL 21671812, at *2 n.7.

[86]   *Id.* at *3.

'unless and until,' or 'null and void.'"[87] Although *a* ninety day time period for Dexia to cure begins to run upon receiving written notice, nothing in the contract suggests that Dexia's notice is necessary to trigger a repurchase obligation or that the obligation is conditioned upon receiving the notice.[88]

The notice is, at most, "a promise, not an express condition that must be literally performed."[89]  Thus, in order to excuse Dexia's non-performance, any failure to provide "prompt" notice after learning of a possible defect with the Guaranty, would have to be "material" to the MLPA.

But Dexia has offered no evidence to show how failure to give written notice of the breach in May 2010 was material.[90]  Dexia admits that it was aware of the Stearns County litigation and that the Trust took discovery from Dexia's

---

[87]     *Powlus v. Chelsey Direct LLC*, No. 09 Civ. 10461, 2011 WL 135822, at *4 (S.D.N.Y. Jan. 10,2011).

[88]     *See Ace Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA, Nat. Ass'n v. DB Structured Products, Inc.,* No. 13 Civ. 1869, 2014 WL 1116758, at *15 (S.D.N.Y. Mar. 20, 2014) (holding that a provision requiring a Trustee to "promptly notify" the seller "and ask it to cure the breach or repurchase the loan within 60 days is not a condition precedent because "nothing in the agreements . . . expressly conditions [the seller's] repurchase obligation on receiving notice from the Trustee.").

[89]     *Id*.

[90]     *See Frank Felix*, 111 F.3d at 289 ("For a breach of a contract to be material, it must go to the root of the agreement between the parties" and be "so substantial that it defeats the object of the parties in making the contract.").

closing counsel "regarding the Guaranty, the execution of the Guaranty, and the negotiations relating to the Guaranty."[91]  Dexia was not "deprived of the opportunity to cure" because nothing in the MLPA or PSA conditioned its ability to cure on receiving written notice from the Trust.[92]  Most importantly, there is ample evidence in the record that Dexia would *not* have cured even if it received notice because it "believed [it] had that [valid] personal guarantee."[93]  Thus, even if the Trust had failed to provide "prompt notice," such failure would be insufficient to excuse Dexia's non-performance.

### 2.    Covenant of Good Faith and Fair Dealing

Dexia opposes the Trust's motion for summary judgment because "[t]here is a material issue of fact as to whether Plaintiff has breached the [MLPA] by failing to use good faith efforts in [its] litigation against the Guarantors."[94]

---

[91]    12/9/10 Letter from Kim JoDene Donat, counsel for Best & Flanagan, to Stephanie Dionne, representative of Dexia, Ex. 5 to Mallon Decl., at 1.

[92]    While the MLPA and PSA dot not *require* Dexia to cure absent written notice, nothing in the Agreements appears to preclude it from doing so. Further, it is unclear what Dexia could have done to cure given the circumstances of the defect.

[93]    2/11/14 Deposition Testimony of Diana Kutas, corporate representative of Dexia, Ex. 12 to Mallon Decl., at 268:12.

[94]    Dexia Real Estate Capital Markets' Opposition to Plaintiff's Motion for Summary Judgment ("Dexia Opp."), at 12.

Dexia alleges that the Trust's "failure to obtain affidavits or other evidence from Dexia to assist [the Trust] in refuting the guarantors' claims" shows that it breached the duty of good faith and fair dealing.[95]

The Trust responds that it could not have breached the MLPA because it is not a party to that agreement.  However, Dexia contends that the MLPA and PSA were "executed the same day . . . as part of a single transaction."[96]  While the two contracts refer to each other, there is no evidence in either document that the contracts are part of the same transaction.  As the Trust persuasively argues, "the MLPA is a discrete purchase and sale agreement regarding particular loans originated by Dexia, whereas the PSA governs the ongoing relationship among the parties to the PSA (i.e., the Trustee, the Master Servicer, [and] the Special Servicer) charged with operating and administering the Trust."[97]

Alternatively, Dexia argues that the Trust is a party to the MLPA as a result of the assignment in the PSA.  But in the PSA, WCMS assigned certain of its *rights* as purchaser under the MLPA to the Trust.  It did not assign its obligations.[98]

---

[95]     *Id*. at 13.

[96]     *Id.* at 5.

[97]     5/15/14 Plaintiff's Reply in Support of Its Motion for Summary Judgment, at 4.

[98]     *See id.*

Section 18 of the MLPA explains that "[t]he assignee shall, *to the extent of such assignment,* succeed to the rights and obligations hereunder of the Purchaser."[99] The extent of the assignment does not extend to WCMS's obligations under the MLPA.

### C.   Dexia Breached the MLPA By Failing to Repurchase the Marketplace Loan

Dexia argues that it did not breach the MLPA because the Full-Recourse Provision of the Guaranty is enforceable, and thus, it had no duty to repurchase.[100]  This argument is precluded by the doctrine of collateral estoppel – twice.  Under Minnesota law, collateral estoppel precludes a party from re-litigating identical legal issues where there was a final judgment on the merits, the estopped party was a party or in privity with a party to the prior adjudication, and the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.[101]

Dexia has already fully litigated the issue of whether it was collaterally estopped from relitigating the enforceability of the Full Recourse Provision in the Hennepin County litigation.  The issue of whether the Stearns

---

[99]     MLPA § 18 (emphasis added).

[100]     Dexia Opp. at 14.

[101]     *See Lemmer*, 736 N.W.2d at 659.

28

County decision estops Dexia from relitigating the enforceability of the Guaranty
was the exact issue at the center of the Hennepin County litigation, which reached
a final judgment on the merits.  Dexia was a party to the Hennepin County action
and had a full and fair opportunity to be heard, including full briefing on the
Guarantor's motion to dismiss and oral argument.

The Trust was not a party to the Hennepin County litigation, and thus,
seeks to use that judgment offensively to preclude Dexia from raising an
affirmative defense that the Guaranty was enforceable.  While courts are hesitant to
permit the use of offensive collateral estoppel when such use would be unfair to the
defendant or result in duplicative litigation, no such unfairness exists here.  None
of the unfairness factors identified by the Supreme Courts of the United States and
Minnesota are present.[102]

The breach of contract proceeding in this Court was foreseeable.  The
Hennepin County judgment is not inconsistent with previous judgments.  Different
procedures do not apply in this action.  The Trust could not have joined in the
Hennepin County action for the same reason that the Hennepin County court
granted the Guarantors' motion to dismiss against Dexia – the Trust, like Dexia,
was collaterally estopped from relitigating the enforceability of the Full-Recourse

---

[102]     *See Falgren,* 545 N.W.2d at 906-07.  *See also Parklane*, 439 U.S. at
329.

Provision.

Even in the absence of the Hennepin County judgment, collateral estoppel would apply because the enforceability of the Full-Recourse Provision was fully litigated in the Stearns County litigation.  Dexia's arguments as to the enforceability of the Full-Recourse Provision are identical to the arguments raised by the Trust in the Stearns County litigation.  Although Dexia was not a party to the Stearns County litigation, it is bound by that judgment as a privy of the Trust. The Trust, by virtue of its "substantive legal relationship" as Dexia's assignee to the rights on the loan, had an identical interest to Dexia in enforcing the Full-Recourse Provision.[103]  Dexia claims that the Trust's "incentive to fully litigate the issues in the Stearns case is a question of fact and . . . posits that [the Trust's] incentive was colored by [its] belief that it could force Dexia to repurchase the Loan if [the Trust] lost in that case."[104]  However, Dexia has offered no facts to support this allegation.  At best, Dexia's allegations again amount to disagreement with the Trust's litigation strategy, but that is not enough to destroy the privity created by the commonality of interest and the substantive legal relationship

---

[103]     *Taylor*, 553 U.S. at 894.  *Accord* 7/1/14 Stearns County Order, at 9 (describing Dexia and the Trust as privies because "they had [a] mutual or successive relationship in the same property rights").

[104]     Dexia Opp. at 17.

between the Trust and Dexia.  For these reasons, the defective Guaranty constitutes a breach of Representations 5 and 6 of the MLPA and Dexia's failure to repurchase the loan upon demand is a breach of the MLPA.

### D.   Specific Performance Is the Appropriate Remedy

The MLPA and PSA provide that if Dexia fails to cure a breach or defect within 90 days of the written request, it must repurchase the loan at an applicable purchase price.[105]  "Under New York law . . . a party can be compelled to perform its contractual obligations if (1) there is a valid contract; (2) plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; (3) defendant is able to perform its obligations; and (4) plaintiff has no adequate remedy at law."[106]  "When specific performance is contemplated by the contract, courts tend to find that irreparable harm would be suffered unless specific performance is granted."[107]

In *Wells Fargo Bank v. Bank of America*, the court recently ordered specific performance where the contractual provision, like the one here, provided

---

[105]     *See* MLPA § 3(c) and PSA § 2.03(a).

[106]     *LaMirada Prods. Co. v. Wassell PLC*, 823 F.Supp. 138, 140 (S.D.N.Y. 1993) (citations omitted).

[107]     *Wells Fargo Bank v. Bank of Am.*, No. 11 Civ. 4062, 2013 WL 372149, at *8 (S.D.N.Y. Jan. 31, 2013).

that a mortgage loan seller's "obligation to cure any breach or repurchase . . . for the affected Mortgage Loan pursuant to [the contract] shall constitute the sole remedy available to the Purchaser in connection with a breach of any of the Seller's representations and warranties."[108] The court concluded that specific performance was appropriate because "the parties contemplated that [the Seller] would repurchase any loans for which r[epresentations] [and] w[arranties] were breached ; indeed, it is the sole remedy available under the contractual language."[109] "The CMBS [commercial mortgage-backed securities] case law and the parties' contract make clear that a repurchase provision is designed to shift the risk to the selling party in the event that a dispute arises, and that such a provision is the appropriate method of making Plaintiff whole once a breach of warranty is established."[110]  Because the parties bargained for specific performance and because repurchase of the Marketplace Loan remains possible,[111] it is the appropriate remedy in this case.

---

[108]     *Id*.

[109]     *Id*.

[110]     *Wells Fargo Bank v. Bank of Am.*, No. 10 Civ. 9584, 2013 WL 1285289, at *10 (S.D.N.Y. Mar. 28, 2013) (quotation omitted).

[111]     *See* Pl. 56.1 Statement ¶¶ 84-85 (explaining that the Marketplace Loan is outstanding and secured by the Stearns County property and that the Mortgage File can be transferred from the Trust and Special Servicer.)

32

## VI.   CONCLUSION

For the foregoing reasons, the Trust's motion for summary judgment is GRANTED and Dexia's motion for summary judgment is DENIED.  Dexia shall repurchase the Marketplace Loan at the applicable purchase price as set forth in the PSA and MLPA.  The Trust shall file a written submission as to the proper calculation of the purchase price by July 21, 2014.  Dexia's response is due on August 4, 2014.  The Trust's reply is due on August 11, 2014.  The Clerk of the Court is directed to close these motions (Dkt. No.  68 and 74).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              July 9, 2014

33

**- Appearances -**

**For Plaintiff:**

Michael C. Hartmere, Esq.
Venable LLP
1270 Avenue of the Americas, 25th Floor
New York, NY 10020
(212) 307-5500

Gregory A. Cross, Esq.
Heather Deans Foley, Esq.
Colleen Mallon, Esq.
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, MD 21202
(410) 244-7742

**For Defendant:**

David D. Ferguson, Esq.
G. Edgar James, Esq.
Polsinelli Shughart PC
900 W. 48th Place, Ste. 900
Kansas City, MO 64112
(816) 753-1000