**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**



------------------------------------------------------- X

**U.S. BANK NATIONAL ASSOCIATION,**
**AS TRUSTEE FOR THE REGISTERED**
**HOLDERS OF WACHOVIA BANK**
**COMMERCIAL MORTGAGE TRUST,**
**COMMERCIAL MORTGAGE PASS-**
**THROUGH CERTIFICATES, SERIES**
**2006-C28, ACTING BY AND THROUGH**
**ITS SPECIAL SERVICER CWCAPITAL**
**ASSET MANAGEMENT LLC,**

              **Plaintiff,**

  - against -

**DEXIA REAL ESTATE CAPITAL**
**MARKETS F/K/A ARTESIA MORTGAGE**
**CAPITAL CORPORATION,**

              **Defendant.**

------------------------------------------------------- X

**OPINION AND ORDER**

**12-cv-9412 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

In 2006, Dexia Real Estate Capital Markets ("Dexia") issued a

$13,800,000 commercial real estate loan ("Marketplace Loan") to several

borrowers.  It then resold the loan to a third-party buyer, who in turn reassigned it

to U.S. National Bank Association ("the Trust").  The resale was consummated by

a Mortgage Loan Purchase Agreement ("MLPA"), and the reassignment by a

Pooling and Servicing Agreement ("PSA").  In tandem, the MLPA and PSA set out

-1-

the representations and warranties to which Dexia stipulated, and to which it was bound, as the issuer of the Marketplace Loan.

On July 9, 2014, I ruled that Dexia has been in breach of those representations and warranties since 2011.[1] By way of remedy, I held that Dexia is obligated – pursuant to Section 2.03(a) of the PSA – to repurchase the Marketplace Loan from the Trust.[2] The only remaining dispute concerns the amount of the repurchase price. The Trust asserts that it is entitled to $19,650,370.17,[3] a calculation that includes (1) reimbursement for attorneys' fees and (2) prejudgment interest during the window between Dexia's breach – in 2011 – and my July 2014 ruling.[4]

Dexia disagrees on both fronts. It argues that the Trust was wrong to include attorneys' fees and prejudgment interest in the repurchase price.[5] For the

---

[1]    *See U.S. National Bank Ass'n v. Dexia*, No. 12 Civ. 9412, 2014 WL 3368670 (July 9, 2014) ("Merits Op."). Familiarity with the underlying facts is presumed.

[2]    *See id*. at *9.

[3]    *See* Plaintiff's Statement of the Purchase Price ("Plaintiff's Statement").

[4]    *See id.* at 3-6.

[5]    *See* Dexia's Response to Plaintiff's Statement of the Purchase Price ("Response"). In addition to its core claims regarding attorneys' fees and prejudgment interest, Dexia also argues (1) that the Trust's attorneys' fees are unreasonable, and (2) that the Trust's calculation of "P & I Advances" – the

reasons set forth below, the repurchase price should be calculated as set out in the Trust's statement,[6] subject to a ninety-day modification in the calculation of prejudgement interest, as outlined below.

## II.    APPLICABLE LAW

### A.    Attorneys' Fees

Under New York law,[7] parties are permitted to shift attorneys' fees by contract, but their "intention to do so [must be] unmistakably clear from the language of the promise."[8]  This does not mean, however, that contracts must incant the magic words "attorneys' fees."  Rather, the inquiry is holistic:  the

---

expense category referring to bank advances used to cover its continued obligation on the Marketplace Loan – is slightly overstated.  These arguments can be disposed of summarily.  As for the reasonableness of attorneys' fees, the Trust argues that Dexia has "failed to come forward with a single shred of evidence" to substantiate its position.  Plaintiff's Reply Brief ("Plaintiff's Reply"), at 8.  I agree.  As for the calculation of "P & I Advances," even if Dexia is right, the error is plainly *de minimis*: it would make a difference of roughly $25,000 in an overall price of nearly $20,000,000.  Apart from that, the discrepancy between how the Trust calculated the "P & I Advances" and how Dexia believes it *ought* to have done so is plainly an accounting dispute.  Unless the parties' agreement speaks to that question – and there is no evidence to that effect – this Court has no basis to intervene.

[6]      *See* Plaintiff's Statement.

[7]      The MLPA and PSA are governed by New York law.  *See* MLPA § 15 and PSA § 11.04.

[8]      *Hooper Assoc. Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (1989).

parties' intention to shift attorneys' fees can be "manifest from the surrounding

facts and circumstances or purpose of the agreement."[9]

## B. Prejudgment Interest

Section 5001(a) of New York's Civil Practice Law and Rules provides

that

> [i]nterest shall be recovered upon a sum awarded because of a breach of
> performance of a contract, or because of an act or omission depriving or
> otherwise interfering with title to, or possession or enjoyment of,
> property, except that in an action of an equitable nature, interest and the
> rate and date from which it shall be computed shall be in the court's
> discretion.[10]

The section establishes a statutory default for breach of contract disputes governed

by New York law: the prevailing party is presumptively entitled to prejudgment

interest on the "sum awarded."[11] The purpose of assessing prejudgment interest is

not to "penal[ize] [] the breaching party, but rather [] to compensate the wronged

---

[9]      *Promoto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 650 (S.D.N.Y.
1999) (citing *Hooper*, 74 N.Y.2d at 492). *Accord LaSalle Bank v. Capco American
Securitization Corp.*, No. 02 Civ. 9916, 2005 WL 3046292, at *6 (S.D.N.Y. Nov.
13, 2005) (holding that an agreement allowing for the "recovery of any expenses
arising out of the enforcement of the repurchase obligation" establishes an
intention to shift attorneys' fees).

[10]      N.Y. C.P.L.R. § 5001(a).

[11]      *See J. D'Addario & Co. v. Embassy Indus.*, 20 N.Y.3d 113, 117-18
(2012).

-4-

party for the loss of use of the money."[12]  The purpose, in other words, is to make the prevailing party whole, not only for the breach, but also for the delay between the occurrence of the breach and its recovery of the sum owed.

The application of section 5001(a) is not always mandatory.  Under New York law, parties are free to set a "contract rate" of prejudgment interest in lieu of the statutory rate.[13]  And they may even choose to waive prejudgment interest entirely:  by bargaining for an "exclusive" remedy,[14] designed to make the parties whole without assessing prejudgment interest.[15]

## III.   DISCUSSION

### A.   Attorneys' Fees

Dexia argues that the Trust is not entitled to attorneys' fees because it failed to meet the "extraordinarily exacting" burden of showing, through

---

[12]     *Katzman v. Helen of Troy*, No. 12 Civ. 4220, 2013 WL 1496952, at *2 (S.D.N.Y. Apr. 11, 2013) (citing *J. D'Addario*, 20 N.Y.3d at 117).

[13]     *See Williamson & Co., Inc. v. Colby Engraving & Rubber Plate Corp.*, 413 N.Y.S.2d 580, 581-82 (1979).

[14]     *J. D'Addario*, 20 N.Y.3d at 119.

[15]     *See id.* at 118-19 (holding that "parties to a civil dispute are free to chart their own course [and] may fashion . . . how damages are to be computed without interference by the courts") (citing *Town of Orangetown v. Magee*, 88 N.Y.2d 41, 54 (1996)).

"unmistakably clear [] language," that the parties intended to shift attorneys' fees.[16]
But Section 16 of the MLPA provides that in "any legal action, suit or proceeding
[] commenced between the Seller and the Purchaser regarding their respective
rights and obligations under this Agreement, the prevailing party shall be entitled
to recover, in addition to damages or other relief, costs and expenses, attorneys'
fees and court costs."[17]   There can be no dispute that Dexia is bound by the terms
of the MLPA.   Nor can be there be any dispute that the Trust, when it signed the
PSA, assumed the "rights [of a purchaser] under the MLPA."[18]   Therefore,
attorneys' fees are owed.[19]

### A.   Prejudgment Interest

Dexia offers two arguments against including prejudgment interest in
the repurchase price.

#### 1.   Section 5001(a) Does Not Apply

Dexia's first argument is based on a narrowly technical reading of the

---

[16]     Response at 6 (citing *Hooper*, 74 N.Y.3d at 492).

[17]     MLPA § 16.

[18]     Merits Op., 2014 WL 3368670, at *8.

[19]     Because the MLPA authorizes the inclusion of attorneys' fees in the
calculation of the repurchase price, I need not resolve the parties' dispute about
whether *the PSA* independently authorizes the inclusion of attorneys' fees. *See*
Response, at 7-12; Plaintiff's Reply, at 5-7.

governing statute.  Section 5001(a) provides that prejudgment interest "shall be recovered *upon a sum awarded"* in breach of contract actions.[20]  Because my July 2014 ruling ordered specific performance, not damages, Dexia argues that the ruling "awarded" no "sum."[21]  According to Dexia, the "repurchase remedy in this case is not a money damages award [but] specific performance of the repurchase obligation,"[22] which means that section 5001(a) does not apply, and prejudgment interest – which is "purely a creature of statute"[23] – should not be assessed.

Dexia correctly notes that my July 2014 ruling requires specific performance, as opposed to contract damages.  It is also right that specific performance, as a remedy for breach of contract, is distinct from a damages award.  But on the facts at hand, this distinction is bereft of a meaningful difference.  Although my July 2014 ruling does not *formally* award a "sum" to the Trust, the functional result is identical.  The specific performance that Dexia must now undertake – repurchasing the Marketplace Loan – requires it to pay a large (and specifc) sum of money to the Trust.

---

[20]     N.Y. C.P.L.R. § 5001(a) (emphasis added).

[21]     Response at 4-6.

[22]     *Id.* at 5.

[23]     *Matter of Bello v. Roswell Park Cancer Inst.*, 5 N.Y.3d 170, 172 (2005).

Dexia asks me to read section 5001(a) in a way that distinguishes between (1) requiring a party to transfer a sum of money, and (2) requiring performance that can only be discharged *by* transferring a sum of money. I decline to interpret the statute so narrowly. There is no indication that New York courts favor this formalistic construction of section 5001(a).[24] Nor does the policy rationale behind awarding prejudgment interest – ensuring that parties are compensated not only for the hardship of breach, but also for the hardship of delay – cut in Dexia's favor. In fact, it is just the opposite. To hold section 5001(a) inapplicable here would, in effect, net a windfall for Dexia, who clearly derived an economic benefit from retaining the money it otherwise would have paid to the Trust during the period between the breach in 2011 and my July 2014 ruling.

### 2.  Prejudgment Interest Was Waived

Alternatively, Dexia argues that even if my July 2014 ruling triggers section 5001(a), the loan documents operate as an effective waiver of statutory interest because they set out repurchase as the "sole remedy" for breach.[25] Dexia's

---

[24]  Longstanding principles of federalism support this approach to unresolved matters of state law. *See Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 500 (1941) ("The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court.").

[25]  Response at 2-3.

main authority for this proposition is a 2012 New York Court of Appeals case, *J. D'Addario & Company v. Embassy Industries*,[26] which held that "regardless of what [Section] 5001(a) customarily requires in terms of statutory interest for breach of contract cases," when parties bargain for an "exclusive remedy" for breach, that remedy "should be honored."[27]  Simply put, if parties wish to contract around section 5001(a)'s default, they may.

In Dexia's view, the logic of *J. D'Addario* applies directly to this case:  because the MLPA makes clear that "repurchase [is] the sole remedy available to [the Trust]," it should be construed as an effective waiver of statutory interest under section 5001(a).[28]  The success of this argument depends on a broad reading of *J. D'Addario*, which could support the proposition that any time parties specify an exclusive remedy, they circumvent section 5001(a).  But the facts of *J. D'Addario* belie this claim.  There, the parties set up an interest-bearing escrow account to be liquidated as damages in the event of breach, and they specified that the wronged party would retain "no further rights" once those liquidated damages – from the escrow account – were awarded.

---

[26]     20 N.Y.3d 113 (2012).

[27]     *Id.* at 119.

[28]     Response at 2.

In other words, the parties in *J. D'Addario* devised an alternative means of resolving the problem that statutory prejudgment interest serves to rectify: the economic hardship associated with delayed judgment, due to the time-value of money. Here, it is true – as it was in *J. D'Addario* – that the loan documents set out an "exclusive remedy." But *unlike* in *J. D'Addario*, the exclusive remedy agreed on by Dexia and the Trust involves no built-in substitute for statutory interest. *J. D'Addario* is therefore easily distinguishable from the instant case. Here, section 5001(a) requires an award of prejudgment interest.[29]

### 3.    Ninety Days Should Be Excluded from the Calculation

Finally, as an addendum to its main arguments, Dexia has asked that the calculation of prejudgment interest be modified to exclude the first ninety days of the time-window proposed by the Trust. According to the Trust, "prejudgment interest should be assessed from and after the date when the Trust demanded that

---

[29]    In adopting this narrow reading of *J. D'Addario*, I note that two of my colleagues – Judges Engelmayer and Oetken – recently issued opinions that decline to apply *J. D'Addario*'s waiver rule to contracts governed by New York law. *See Katzman*, 2013 WL 1496952, at *6 (holding that *J. D'Addario* did not apply to a contract governing a failed corporate merger because, despite the existence of a sole remedy provision, the parties had not "expressly anticipated a particular form of breach and agreed upon an exclusive remedy for [it]"). *See also Wells Fargo v. Bank of America*, No. 10 Civ. 9584, 2014 WL 476299 (S.D.N.Y. Feb. 6, 2014) (declining to apply *J. D'Addario* to a judgment requiring loan repurchase because the underlying loan documents provided for either repurchase *or damages* as the proper remedy for breach).

Dexia repurchase the Marketplace Loan on September 19, 2011."[30]  In response,

Dexia argues that interest should "not start running until [] 90 days" from that

point, since "Section 2.03 of the PSA does not require the repurchase to actually

occur for 90 days."[31]

   The purpose of assessing prejudgment interest is to restore the Trust

to the position it would have enjoyed had Dexia complied with its obligations.  The

PSA makes it very clear Dexia had ninety days "from [the] receipt of [a] written

request" to either cure the defect or repurchase the loan.[32]  By its own admission,

the Trust submitted a written request to Dexia on September 29, 2011.  Therefore,

Dexia was not in breach until ninety days *after* September 29, 2011 – or, December

28, 2011.  Interest runs from the latter.[33]

---

[30]  Plaintiff's Statement at 4.

[31]  Response at 6 n.13.  *Accord* PSA § 2.03.

[32]  PSA § 2.03.

[33]  In support of assessing interest from September 29, 2011, the Trust cites to Section 5001 for the proposition that "interest shall be computed from the earliest ascertainable date the cause of action existed."  Plaintiff's Statement at 4, n.3.  Accord N.Y. C.L.P.R. § 5001(b).  Under New York law, a cause of action for breach of contract "exists" when the plaintiff has a legal right to make the demand – that is, at the time of breach.  Merits Op., 2014 WL 3368670, at *6.  However, because Dexia was not obligated to repurchase the Marketplace Loan until ninety days after the Trust's demand, the Trust was not wrongfully deprived of the benefit of repurchase during the intervening period.  Therefore, the Trust is not entitled to prejudgment interest until after the ninety days elapsed.  *Accord Wells Fargo*, 2014

## VI.   CONCLUSION

For the reasons set forth above, the Trust's Statement of the purchase price is AFFIRMED in part and MODIFIED in part. The purchase price must included attorneys' fees in the amount of $1,269,930.80. The purchase price must also include prejudgment interest running from December 28, 2011 until September 3, 2014, to be calculated according to the formula set out in Plaintiff's Statement.[34] The Trust is ordered to submit a proposed recalculation of the repurchase price for the Court's approval no later than September 3, 2014.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 28, 2014

---

WL 476299, at *4 ("The correct calculation of damages is therefore the amount that [the breaching party] would have paid if it had repurchased the loans *when it was supposed to have done so*, plus statutory prejudgment interest from that date") (emphasis added).

[34]     *See* July 21, 2014 Declaration of Demetrios J. Morakis, Vice President of CWCapital Asset Management LLC [Dkt. # 93].

**- Appearances -**

**For Plaintiff:**

Michael C. Hartmere, Esq.
Venable LLP
1270 Avenue of the Americas, 25th Floor
New York, NY 10020
(212) 307-5500

Gregory A. Cross, Esq.
Heather Deans Foley, Esq.
Colleen Mallon, Esq.
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, MD 21202
(410) 244-7742

**For Defendant:**

David D. Ferguson, Esq.
G. Edgar James, Esq.
Polsinelli Shughart PC
900 W. 48th Place, Ste. 900
Kansas City, MO 64112
(816) 753-1000