UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE
FOR THE REGISTERED HOLDERS OF WACHOVIA
BANK COMMERCIAL MORTGAGE TRUST,
COMMERCIAL MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-C28, ACTING BY AND
THROUGH ITS SPECIAL SERVICER CWCAPITAL
ASSET MANAGEMENT LLC,

                       Plaintiff,

            -v-

DEXIA REAL ESTATE CAPITAL MARKETS f/k/a/
ARTESIA MORTGAGE CAPITAL CORPORATION,

                       Defendant.

------------------------------------------------------------------X

12 Civ. 9412 (PAE)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/12/16

PAUL A. ENGELMAYER, District Judge:

      Plaintiff—whom the Court refers to as "the Trust"—brought this breach of contract action against defendant Dexia Real Estate Capital Markets ("Dexia"). This decision addresses Dexia's motion for attorneys' fees, costs, expenses, and prejudgment interest.[1] Dexia filed this motion after the Second Circuit, overturning a grant of summary judgment to the Trust, held that Dexia was entitled to summary judgment on statute-of-limitations grounds. For the following reasons, the Court grants Dexia's motion. The Court reserves on the amount to be awarded, pending further briefing.

---

[1] For brevity, the Court henceforth refers to the requested sums simply as "attorneys' fees."

## I. Background

### A. Factual Background[2]

In September 2006, Dexia made a $13,800,000 commercial mortgage loan (the "Loan") to MP Operating, LLC and Annex Operating, LLC (collectively, the "Borrowers"). The Loan was secured by a mortgage against a commercial property in Minnesota (the "Property"). In connection with the Loan, four individuals (the "Guarantors") who were associated with the Borrowers agreed to guarantee the loan (the "Guaranty"). If certain financial requirements were not met, the Guarantors were to be personally liable, under Section 2(b)(iv) of the Guaranty (the "Full Recourse Provision"), for the Loan's full amount.

On October 1, 2006, Dexia sold the Loan to Wachovia Commercial Mortgage Securities, Inc. ("Wachovia"), pursuant to a Mortgage Loan Purchase Agreement ("MLPA"). *See* Dkt. 147, Ex. A ("MLPA"). On the same date, Dexia and Wachovia entered into a Pooling and Servicing Agreement ("PSA") to govern the administration of the Trust, into which the Loan (among others) was to be deposited. Pursuant to the PSA, Wachovia assigned to the Trust all its "rights, title and interest" in the Loan, as well as its "rights" under Sections 2, 3, 9, 10, 11, 12, 13, 14, 16, 17, 18 and 19 of the MLPA. *See* Dkt. 131, Ex. 10 ("PSA"), at § 2.01(a). Section 16 of the MLPA, relevant here, provided for the shifting of attorneys' fees to the prevailing party in any action commenced between Dexia and Wachovia regarding the MLPA.[3]

---

[2] These undisputed facts are primarily drawn from Judge Scheindlin's summary judgment decision in favor of the Trust, *see U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, No. 12 Civ. 9412 (SAS), 2014 WL 3368670 (S.D.N.Y. July 9, 2014) ("*Dexia I*"), and from the Second Circuit's reversal of that decision on statute-of-limitations grounds, *see* 2016 WL 1042090 (2d Cir. Mar. 18, 2016) (summary order) ("*Dexia II*"), and the materials cited therein. Except where specifically quoted or referenced, no further citations to these sources will be made.

[3] Section 16 of the MLPA provides:

2

In the MLPA, Dexia made certain representations and warranties regarding the loans that were sold to Wachovia and ultimately deposited into the Trust. Dexia represented, *inter alia*, that the underlying loan documents were enforceable and not subject to any valid offset, defense, counterclaim, abatement, or right to rescission.

In January 2010, the Loan went into default. In September 2010, the Trust filed suit in Stearns County, Minnesota against the Borrowers and Guarantors ("Stearns County Litigation"). The Guarantors, as an affirmative defense, maintained that the Guaranty they had executed did not, in fact, contain the Full Recourse Provision, but a more limited provision. The Guarantors contended that Dexia's closing counsel, Best & Flanagan, had attached the signature page from the limited guaranty to the version containing the Full Recourse Provision without their consent.

After discovery closed, the Guarantors moved for summary judgment. In July 2011, the Stearns County court held that the Full Recourse Provision of the Guaranty was unenforceable. The Trust appealed, but dismissed the appeal with prejudice before any briefs were filed.

In August 2012, the Guarantors sued Dexia and Best & Flanagan in Hennepin County, Minnesota for fraud and negligence relating to the swapped signature pages ("Hennepin County Litigation"). Dexia filed a counterclaim for contract reformation. In March 2014, the Hennepin County court granted the Guarantors' motion to dismiss this counterclaim, holding that Dexia

---

> If any legal action, suit or proceeding is commenced between the Seller [Dexia] and the Purchaser [Wachovia] regarding their respective rights and obligations under this Agreement, the prevailing party shall be entitled to recover, in addition to damages or other relief, costs and expenses, attorneys' fees and court costs (including, without limitation, expert witness fees). As used herein, the term "prevailing party" shall mean the party which obtains the principal relief it has sought, whether by compromise settlement or judgment.

MLPA § 16.

3

was barred from relitigating issues already decided in the Stearns County Litigation. The parties subsequently settled in March 2015.

### B. Procedural History

On September 29, 2011, the Trust wrote to Dexia, asserting that, because the Guaranty was unenforceable, Dexia had breached its representations in the MLPA. The Trust asked that Dexia either cure the alleged breach or repurchase the Loan; Dexia refused. On December 27, 2012, the Trust commenced this breach of contract action, Dkt. 1 ("Compl."), which was assigned to Judge Scheindlin.

On January 25, 2013, Dexia filed a motion to dismiss on statute-of-limitations grounds. Dkts. 6–7. Dexia argued that any breach occurred in October 2006—when the Loan was sold to Wachovia—and therefore a lawsuit brought more than six years later was untimely. On June 6, 2013, Judge Scheindlin denied this motion, holding that the Trust's claim did not accrue until the value of the Loan suffered material adverse effects from Dexia's alleged misrepresentations. Dkt. 15, *reported at U.S. Bank Nat. Ass'n v. Dexia Real Estate Capital Markets*, 959 F. Supp. 2d 443 (S.D.N.Y. 2013).

Following discovery, the parties filed cross-motions for summary judgment. Dkts. 68–89. On July 9, 2014, Judge Scheindlin granted the Trust's motion for summary judgment and denied Dexia's cross-motion. Dkt. 90, *reported at U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, No. 12 Civ. 9412 (SAS), 2014 WL 3368670 (S.D.N.Y. July 9, 2014) ("*Dexia I*"). In pertinent part, Judge Scheindlin held that the Trust's suit was timely, *see id.* at *6, and that Dexia was collaterally estopped from denying its breach of the MLPA because the Stearns County court had found that the Full Recourse Provision was unenforceable. *See id.* at *9. The Trust, invoking Section 16 of the MLPA, then sought and was granted attorney's fees and

prejudgment interest. Dkt. 102, *reported at U.S. Bank Nat. Ass'n v. Dexia Real Estate Capital Markets*, No. 12 Civ. 9412 (SAS), 2014 WL 4290642 (S.D.N.Y. Aug. 28, 2014).

Dexia appealed. On March 16, 2016, the Second Circuit reversed and remanded with instructions to grant Dexia's summary judgment motion on statute-of-limitations grounds. *See* Dkt. 118, *reported at U.S. Bank Nat. Ass'n v. Dexia Real Estate Capital Markets*, No. 14 Civ. 2859, 2016 WL 1042090 (2d Cir. Mar. 16, 2016), *as amended* (Mar. 18, 2016) (summary order) ("*Dexia II*"). The Circuit held that the six-year statute of limitations for the Trust's contract claims had begun to run in October 2006, when the MLPA was executed.

On April 11, 2016, this Court, to which this matter was reassigned upon Judge Scheindlin's retirement, granted Dexia's motion for summary judgment, in accordance with the Second Circuit's instructions. Dkt. 123. On April 22, 2016, Dexia moved for attorneys' fees pursuant to Section 16 of the MLPA, Dkt. 125, and filed a supporting brief, Dkt. 126 ("Dexia Br."). On May 6, 2016, the Trust filed its opposition. Dkt. 130 ("Trust Br."). On May 20, 2016, Dexia filed its reply. Dkt. 133 ("Def. Reply"). On June 29, 2016, the Court heard argument. Dkt. 148 ("Tr.").

## II. Applicable Legal Standards

Under New York law,[4] attorneys' fees are "incidents of litigation," and a prevailing party "may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." *Hooper Assocs. Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (1989). Courts "should not infer a party's intention to provide [attorneys'] fees as damages for a breach of contract unless the intention to do so is unmistakably clear from the language of the

---

[4] As both parties recognize, the MLPA and PSA are governed by New York Law. *See* MLPA § 15; PSA § 11.04.

5

contract." *Bank of N.Y. Trust Co., N.A. v. Franklin Advisers, Inc.*, 726 F.3d 269, 283 (2d Cir. 2013) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003)) (internal quotation marks omitted); *see also NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear."). If a contractual fee-shifting provision is enforceable, "the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987).

### III. Discussion

Dexia's entitlement to attorneys' fees turns on whether the Trust was assigned both the *right* to receive attorneys' fees in the event it prevailed in litigation seeking to enforce the MLPA, and the *duty* to pay attorneys' fees in the event it lost.[5]

#### A. Assignment of MLPA § 16

This dispute about the extent of the assignment of Section 16, the fee-shifting provision, hinges on the interpretation of, and interaction between, two other contractual provisions, one in the MLPA and one in the PSA. First, Section 18 of the MLPA provides:

> [Wachovia] has the right to assign its interest under this Agreement, in whole or in part, as may be required to effect the purposes of the Pooling and Servicing Agreement, and the assignee shall, to the extent of such assignment, succeed to the rights and obligations hereunder of [Wachovia].

Second, Section 2.01(a) of the PSA provides:

> [Wachovia], concurrently with the execution and delivery hereof, does hereby assign, sell, transfer, set over and otherwise convey to the Trustee, in trust, without recourse . . . all the right, title, and interest of [Wachovia], in, to, and under (i) the

---

[5] The parties do not dispute that Section 16 of the MLPA is sufficiently clear to be enforceable under New York law, or that Dexia is the prevailing party here.

6

> Mortgage Loans and all documents included in the related Mortgage Files and Servicing Files, (ii) the rights of [Wachovia] under Sections 2, 3, 9, 10, 11, 12, 13, 14, 16, 17, 18, and 19 of each of the Mortgage Loan Purchase Agreements, and (iii) all other assets included or to be included in the Trust Fund.

Thus, the MLPA envisioned that the Trust would "succeed to the rights and obligations" of Wachovia "to the extent of such assignment," while the assigning instrument, the PSA, to the extent it referred to Section 16 by name, appears to refer only to Wachovia's *rights* under that section. On this basis, the Trust argues that it was assigned only the right to receive an award of attorneys' fees, not any obligation to pay them.

### 1. Plain Text

The Court's analysis properly starts with the text of the PSA, and specifically that of the central section, § 2.01(a). "When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011). Under New York law, contract language is ambiguous if "a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008). The question of whether contract language is ambiguous is for the Court. *See Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 158 (2d Cir. 2000). In making that determination, "a court should accord [contractual] language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish." *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990) (alteration and internal quotation marks omitted).

Here, the Court finds that PSA § 2.01(a), read as it must be in conjunction with MLPA § 18, the contemporaneously executed source of assignment authority, admits of only one

reasonable interpretation—that both the right to receive and the reciprocal obligation to pay attorneys' fees were assigned to the Trust.

Section 18 authorized Wachovia to "assign its interest" under the MLPA and provided that "the assignee shall, to the extent of such assignment, succeed to [Wachovia's] rights and obligations." This language clearly requires that, if transferred at all, reciprocal rights and obligations—like the fee-shifting provision in § 16—would be transferred together. Section 18 certainly does not clearly anticipate that reciprocal rights and obligations could be cleaved by assignment, such that the rights of a party such as Wachovia (*e.g.*, to obtain fees where a prevailing party) could be transferred, whereas the reciprocal obligations of such a party (to pay fees to a prevailing party) would be retained. Nor does § 2.01(a), by any means, clearly accomplish that end. It does not reserve any obligations for Wachovia; it simply assigns rights and remains silent as to any obligations. If anything, it implicitly leaves Wachovia free of any obligations.

Furthermore, MLPA § 18 equated the word "interest"—which it authorized Wachovia to assign—with Wachovia's "rights *and obligations*" under the MLPA, to which it contemplated an assignee would succeed. The PSA then proceeded to assign not just Wachovia's "rights" under, *inter alia*, § 16—as the Trust assumes—but its "interest" as well. Read literally, § 2.01(a) assigned "all the right, title *and interest* of [Wachovia], in, to, and under . . . (ii) the rights of [Wachovia] under" the specified provisions of the MLPA.

To be sure, this crucial text is unnecessarily garbled, insofar as it assigns the "right, title and interest" of a party "in, to, and under" that party's contractual "rights"—a grammatically awkward formulation, to say the least. This garble underscores the value, in construing the extent of Wachovia's assignment to the Trust, of looking beyond the texts of the MLPA and the

8

PSA, to consider also the background legal precedent in this area and the factual context in which the PSA and MLPA were executed. These factors also overwhelmingly support Dexia's construction.

### 2. Precedent and Context

In general, as the Trust emphasizes, an assignee "is not bound to perform the assignor's duties under the contract unless he expressly assumes to do so." *Lachmar v. Trunkline LNG Co.*, 753 F.2d 8, 10 (2d Cir. 1985). Although courts cannot infer the assignee's assumption of the assignor's duties from its mere acceptance of the assignment, "circumstances surrounding the assignment itself" may "indicate a contrary intention." *Langel v. Betz*, 250 N.Y. 159, 164 (1928).

One such set of circumstances arises when an assignee affirmatively takes steps to adopt and enforce the terms of the contract in a manner that implicates the rights of third parties to the assignment. For instance, in *Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG*, 970 F. Supp. 2d 157 (S.D.N.Y. 2013), this Court held that, even though the assignor purported to assign only rights and assets but not obligations or liabilities, the assignee was bound by the assignor's agreement to arbitrate against a third party where the assignee affirmatively sought to "enforce the rights that it claims to have assumed." *Id.* at 167; *see also GMAC Commercial Credit LLC v. Springs Indus., Inc.*, 171 F. Supp. 2d 209, 215–16 (S.D.N.Y. 2001) (distinguishing cases where assignees were passive, *e.g.*, sued or joined as a third party); *GMAC Commercial Credit, LLC v. Dillard Dept. Stores, Inc.*, 198 F.R.D. 402, 407 (S.D.N.Y. 2001) ("Under New York law, an assignee cannot sue to enforce its rights under the contract without also assuming the other terms of the contract."). The Court noted that the assignor's counterparty, against whom the assignee sought to enforce the contract, had not consented to the assignment. The Court reasoned that allowing "the assignment of rights to a third party to vitiate an arbitration

9

agreement between the original parties, where the agreement provided that it bound assignees and where the assignment was unconsented to by the non-assigning party, would provide an unjustified end-run around a validly-entered arbitration agreement." *Id.*

The parties have cited only one case applying these principles to a fee-shifting provision, but the logic there is persuasive. *See* Dexia Reply 4–5 (citing *Heppler v. J.M. Peters Co.*, 7 Cal. Rptr. 2d 497, 519 (Cal. Ct. App. 1999)). In *Heppler*, as here, the right to collect attorneys' fees was expressly assigned, but the assignment was "silent" as to the corresponding obligation. 87 Cal. Rptr. 2d at 517. Emphasizing the assignees' decision to pursue litigation under the relevant contract, the court held that, where the assignees "were primed to take the benefits of an award of attorney fees if they won," the court could "infer" that they "were prepared to take the concomitant obligation to pay attorney fees" if they lost. *Id.* at 519.

The factual context of this dispute, particularly the roles of the various parties preceding the assignment, underscores the wisdom of finding an assignment of both the Section 16 right, and the Section 16 obligation, with respect to the payment of attorneys' fees to the prevailing party. In arguing otherwise, the Trust necessarily implies that the obligation to pay attorneys' fees to Dexia if Dexia were a prevailing party remained at all times with Wachovia, the assignor. But, significantly, Wachovia's only role in the transaction was to immediately assign the Loan to the Trust under the terms of the PSA. *See* Trust Br. 3. In this litigation initiated by the Trust against Dexia, Wachovia was not a party and had no control over the Trust's lawsuit, and it is therefore implausible that Dexia should turn to Wachovia to seek the fees it incurred in defending against the Trust's time-barred suit. And, more broadly, to the extent the Trust envisions that Dexia would have gained some benefit from Wachovia's retention of the Section 16 obligation in the event of a lawsuit between Dexia and Wachovia, the Trust has not pointed to

any circumstance under which such litigation would ever realistically have occurred. In effect, as Dexia argues, the Trust's construction of the assignment in the PSA as benefiting but not burdening it as to attorneys' fees would transform, *sub silentio*, a "loser pays" provision into a "loser pays only if the loser is Dexia" provision. Dexia Reply 3. The Trust has not at all adequately explained how the parties to the MLPA would have agreed to that: *i.e.*, why Dexia would give Wachovia the power, via assignment, to effectively neuter or vaporize one side of Dexia and Wachovia's reciprocal fee-shifting provision.

And the Trust's position would lead to implausible results, as this case illustrates. Since bringing suit in December 2012, the Trust has engaged in intensive litigation, through discovery to a grant of summary judgment, an appellate reversal, and, finally, a grant of summary judgment to its adversary. The Trust has sought to enforce the MLPA, and itself successfully invoked Section 16 of the MLPA, winning an award of attorneys' fees from Dexia after it initially prevailed on summary judgment before Judge Scheindlin. With the tables having now been turned as a result of the appellate reversal, such that prevailing-party Dexia is entitled to foist its reasonable attorneys' fees onto the Trust, the Trust suggests that the party to whom Dexia must look to vindicate its Section 16 rights as a prevailing party is . . . Wachovia. But the Trust provides neither textual support for this position nor good reason to believe that the parties to either the MLPA or the PSA intended that counterintuitive result.

### B. The Trust's Counterarguments

In opposing this conclusion, the Trust makes several arguments.

#### 1. Remedy vs. Obligation

The Trust principally argues that *Variblend* and the line of cases involving assignments implicating a reciprocal duty to arbitrate are inapposite because whereas an arbitration clause is a "remedial" measure, Section 16 addresses fees, which, the Trust emphasizes, Dexia has referred

11

to as "obligation" as opposed to a remedy. Trust Br. 10 (citing Dexia Br. 14). It is uncontested that "an assignment cannot alter a contract's bargained-for *remedial measures*, for then the assignment would change the very nature of the rights assigned." *Springs Industries*, 171 F. Supp. 2d at 216 (emphasis added); *see also Banque De Paris et des Pays–Bas v. Amoco Oil Co.*, 573 F. Supp. 1464, 1469 (S.D.N.Y. 1983) ("[A]n assignee or other party whose rights are premised on a contract is bound by the remedial provisions bargained for between the original parties to the contract.").

At the outset, the Court rejects the Trust's suggestion that Dexia conceded anything of moment by referring to the Trust's duty to pay Dexia's attorneys' fees as an "obligation." And the language used in the case law to describe fee-shifting provisions is not decisive on this point either. The case law refers to such provisions alternatively as remedial[6] and as creating an obligation.[7] And the central question for the Court of course is not linguistic but substantive. The Trust has not found any case (nor has the Court) standing for the proposition that an

---

[6] *See Carroll Co. v. Sherwin-Williams Co.*, 848 F. Supp. 2d 557, 570 (D. Md. 2012) ("[A]n award of attorneys' fees is a form of relief."); *Beletsis v. Credit Suisse First Boston, Corp.*, No. 01 Civ. 6266 (RCC), 2002 WL 2031610, at *4 (S.D.N.Y. Sept. 4, 2002) ("[A]ttorney's fees are remedies central to civil rights claims.").

[7] The Trust cites several cases, none factually apposite. *See* Dkt. 144 (citing *Parker Hannifin Corp. v. N. Sound Props.*, No. 10 Civ. 6359 (MHD), 2013 WL 3527761, at *3 (S.D.N.Y. July 12, 2013) (referring to "a contractually defined obligation to pay the plaintiff's litigation-related attorney's fees"); *Adesso Café Bar & Grill, Inc. v. Burton*, 904 N.Y.S.2d 490, 491 (2d Dep't 2010) ("[T]he indemnification language in the contract is not so 'unmistakably clear' as to read into the contract the obligation that the defendants were to indemnify the plaintiffs."); *O'Neill v. 225 E. 73 Owners Corp.*, 748 N.Y.S.2d 255, 256 (1st Dep't 2002) ("[P]laintiffs were not effectively relieved of their counsel fee obligation by reason of the payment of those fees by defendant's insurance carrier."); *Orlowski v. Koroleski*, 651 N.Y.S.2d 137, 138 (2d Dep't 1996) (noting "absence of any clear indication that the defendant agreed to undertake the obligation to pay the plaintiff's attorney's fees"); *Staples v. Hoefke*, 235 Cal. Rptr. 165, 173 (Cal. Ct. App. 1987) ("Plaintiffs were not entitled to avoid their contractual obligation to pay reasonable attorney fees based on the fortuitous circumstance that they sued a defendant who obtained insurance coverage providing a defense.").

assignment of rights that is silent as to the transfer of reciprocal obligations transfers only one side of a mutual fee-shifting provision.

Furthermore, Dexia more convincingly characterizes the nature of an obligation to pay attorneys' fees as a remedy—at least in circumstances like these. Such an obligation is distinct from a performance obligation, such as to pay a sum of money, or sell a loan, or make accurate representations. It is, as Dexia argues, more akin to remedial obligations, incident to the dispute resolution process, such as a duty to arbitrate or to bring suit in a particular forum. *See Dillard*, 198 F.R.D. at 407. Indeed, a duty to pay attorneys' fees arises even later in the litigation process than those remedial obligations as to the site and manner of dispute resolution; it arises only if a performance obligation is found to have been breached. In contrast, the cases on which the Trust relies all involved performance obligations, as opposed to obligations incident to dispute resolution. *See A.C. Associates v. Am. Bridge Div. of U.S. Steel Corp.*, No. 88 Civ. 8861 (JMW), WL 1111034, at *2 (S.D.N.Y. Dec. 18, 1989) ("Walsh's assignment transferred only its rights in the contract and created no obligation on the part of Presbyterian Hospital as assignee to assume Walsh's contractual duty to pay amounts owed Metropolitan Steel prior to the assignment."); *Hudson Eng'g Associates, P.C. v. Ames Dev. Corp.*, 643 N.Y.S.2d 677, 678 (2d Dep't 1996) ("[T]he [assignees] are not liable for the survey and engineering fees incurred by the assignor in the absence of a specific agreement to assume those liabilities.").[8]

Instructive here, the MLPA's text supports allocating the fee-shifting provision to the category of remedial, as opposed to performance, obligations. Section 16 is triggered when a

---

[8] Another cited case, *Ivory Dev., LLC v. Roe*, 25 N.Y.S.3d 686, 692–93 (3d Dep't 2016), does not specify exactly what the contractual obligations at issue were. Given that the case involved a dispute over the purchase and development of land parcels, it appears likely that the parties were referring to affirmative performance obligations under the relevant agreements.

13

party prevails in a "legal action, suit or proceeding . . . regarding their respective *rights and obligations* under [the MLPA]." The term "obligations" clearly refers to performance obligations—including, as relevant here, Dexia's obligation to make certain truthful representations about the Loan—and not to attorneys' fees. Moreover, as defined by Section 16, a party is "a prevailing party" when it "obtains the *principal* relief it has sought." The word "principal" suggests that attorneys' fees are also a form of relief—*i.e.*, a remedy.

Therefore, to the extent the Trust seeks to distinguish cases such as *Variblend* addressing remedial duties, its arguments do not win the day. Those cases are indeed distinguishable, but the remedial obligations that they address (*e.g.*, the duty to arbitrate) are sufficiently similar to the fee-shifting obligation at issue here to provide persuasive authority for the Trust's claim that Wachovia's assignment was of both its Section 16 rights and obligations.

### 2. Law of the Case

The Trust separately argues that Dexia's non-entitlement to attorneys' fees is established by the "law of the case" doctrine. That doctrine "posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Sagendorf–Teal v. Cnty. of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996).

In so arguing, the Trust relies on a statement by Judge Scheindlin in a separate chapter in this litigation. In granting summary judgment for the Trust, Judge Scheindlin rejected Dexia's claim that the Trust breached the implied covenant of good faith and fair dealing vis-à-vis the MLPA, reasoning that the Trust was not a party to that contract. *See Dexia I*, at *8. In so holding, Judge Scheindlin rejected Dexia's argument that the Trust *was* a party to the MLPA as a result of the assignment in the PSA. *See id.* She held that Wachovia had assigned its "*rights* as purchaser under the MLPA to the Trust," but not its "obligations." *Id.*

On its face, Judge Scheindlin's broad statement does not clearly apply to Section 16, as it addressed performance obligations only, neither party having raised before her the claim that the fee-shifting provision had been assigned non-reciprocally. The law of the case doctrine is, therefore, inapplicable. In any event, that doctrine is discretionary. It "does not limit a court's power to reconsider its own decisions prior to final judgment." *Aramony v. United Way of Am.*, 254 F.3d 403, 310 (2d Cir. 2001) (internal quotation marks omitted). Given the different posture in which the extent of Wachovia's assignment to the Trust now arises, the Court has exercised its discretion to reconsider Judge Scheindlin's analysis.

### 3. Equity

The Trust also argues that the Court should decline to award Dexia attorneys' fees because "it would be inequitable for Dexia to reap a multi-million dollar windfall in a case in which Dexia was found to have breached the MLPA." Trust Br. 12.

The Trust relies on three cases. None is apposite or persuasive here.

First, the Trust cites *Indu Craft, Inc. v. Bank of Baroda*, No. 87 Civ. 7379 (SHS) (LB), 1995 WL 479516, at *3 (S.D.N.Y. Aug. 10, 1995), *aff'd*, 87 F.3d 614 (2d Cir. 1996). In that case, Indu Craft sued the Bank of Baroda to recover damages from the Bank's breach of the covenant of good faith and fair dealing, as implied in a loan agreement between the parties. *See* 87 F.3d at 616. The Bank counterclaimed for the outstanding amount due on a promissory note executed by Indu Craft. *See id.* Following a jury trial, Indu Craft won a $3.25 million verdict, with the jury finding that the Bank's bad faith caused Indu Craft to be unable to honor the promissory note. *See id.* at 618. That verdict was then overturned on a Rule 50 motion. The Second Circuit reversed, directing that the verdict be reinstated but offset by the amount due on the promissory note so as to "avoid a windfall to Indu Craft." *Id.* On remand, the district court denied the Bank's application for fees, holding that (1) "it would be inequitable and

15

unreasonable to award attorneys' fees to a party that acted improperly," and (2) the Bank was not a prevailing party because it "recover[ed] on its counterclaim . . . only to avoid a windfall" to Indu Craft. 1995 WL 479516, at *3. The Second Circuit affirmed on the latter ground. *See* 87 F.3d at 618. Here, by contrast, the Trust does not dispute that Dexia is the prevailing party. That fact compellingly distinguishes *Indu Craft*.

Separately, the Trust cites *United States v. A.V. De Blasio Constr., Inc.*, 588 F.2d 259 (9th Cir. 1978), on which the district court in *Indu Craft* relied for the proposition that "it would be inequitable and unreasonable to award attorneys' fees to a party that acted improperly." In *De Blasio*, the district court found that "both parties were to blame for the dissension which resulted in termination of the contract," and declined to award attorneys' fees to the winner. *Id.* at 261, 263. The Ninth Circuit affirmed, holding that the district court "in its discretion could conclude that allowing attorneys' fees when both parties had acted improperly would be inequitable and unreasonable." *Id.* at 263. That proposition has never been cited in this Circuit except in *Indu Craft*, and the Second Circuit in that case, notably, did not adopt any such principle in affirming the district court. In any event, even if such a principle did apply in this Circuit, the Court would retain discretion to determine whether "improper" conduct by Dexia outweighs its contractual entitlement to attorneys' fees. The Court holds that it does not. Dexia's mere contract breach as found by Judge Scheindlin, standing alone, does not rise to the level of impropriety that would warrant denial of fees to an otherwise entitled party.[9]

---

[9] The basis on which Judge Scheindlin found Dexia to have breached the MLPA is important, too. Judge Scheindlin held that Dexia breached the MLPA because that issue had already been litigated in Minnesota state court. *See Dexia I*, at *9. The Second Circuit reversed on statute-of-limitations grounds, not reaching Dexia's appellate challenge to the collateral estoppel holding. Any finding of "improper" conduct on Dexia's part is thus exclusively an artifact of a finding by the Minnesota state court. Given the Second Circuit's reversal on other grounds, it is not clear at all that Judge Scheindlin's finding of collateral estoppel retains any force.

16

The third and final case cited by the Trust—*AXA Versicherung AG v. New Hampshire Ins. Co.*, 769 F. Supp. 2d 623 (S.D.N.Y. 2011)—is also off-point. That case involved not a contractual fee-shifting provision, but a bill of costs under Federal Rule of Civil Procedure 54(d)(1), which generally authorizes courts to award costs *other than attorneys' fees* to a prevailing party. Aside from *Indu Craft*, the Trust has not cited any authority that the equitable factors identified in *AXA* for denying costs to a prevailing party control as to contractual fee-shifting provisions. And, even if they did, equity is not offended by an award of fees to Dexia.

### 4. Double Recovery

Finally, the Trust argues that, to prevent a double recovery, the Court should deny Dexia's application. The Trust notes that, in March 2015, Dexia settled the Hennepin County Litigation, including its malpractice claim against Best & Flanagan—the law firm whose purported mishandling of the signature pages in the Guaranty launched a decade of litigation. The Trust represents that Dexia "entertained offers" of at least $2.75 million to settle that case, but the exact amount, and the terms of the settlement, and what the settlement sum reflects, have not been disclosed to the Court. Trust Br. 14. For its part, Dexia represents that its "net recovery" in its suit against Best & Flanagan, once its fees and costs there are taken into account, was "less than $65,000." Dexia Reply 7 n.7. In any event, Dexia represents, the Best & Flanagan settlement did not compensate it for the attorneys' fees incurred in this action, but for the substantive liability created by Best & Flanagan's alleged malpractice. *See* Tr. 40–42.

Resolution of this issue would bear, at most, upon the calculation of the reasonable fee award due to Dexia. It would not bear on Dexia's entitlement, under the MLPA, to a fee award of some amount. On the present record, the Court is not prepared to hold, with Dexia, that any recovery from a third party (Best & Flanagan) that may have served in part to compensate it for fees and costs incurred in defending this lawsuit is categorically irrelevant to its present fee

application. Nor is the Court prepared, given the parties' differing representations, to determine the size of any offset, if one were found merited. Rather, the Court will take up the Trust's claim for an offset in the course of resolving the amount of fees to which Dexia is here entitled. Determining whether any offset is proper for the Best & Flanagan settlement, and if so, its size, will require the Court to review, at the least, the relevant settlement agreement and associated documents.

The Court therefore will direct the parties to provide additional briefing and documentation on this limited issue. The Court also reserves decision on the other issues raised relevant to the *amount* of attorneys' fees to which Dexia is entitled here. The Court does not require or invite additional briefing on those issues.

## CONCLUSION

For the foregoing reasons, the Court holds that Dexia is entitled to an award of attorneys' fees under Section 16 of the MLPA. The Court reserves for later determination the amount of such an award. The Court directs the parties to meet and confer within one week and to file a joint letter by August 26, 2016, setting forth their view(s) as to an expedited and streamlined means of supplying the Court the material necessary to resolve the Trust's claim that the fee award here should be offset by some or all of Dexia's settlement with Best & Flanagan.

SO ORDERED.

<u>*Paul A. Engelmayer*</u>
Paul A. Engelmayer
United States District Judge

Dated: August 12, 2016
       New York, New York