USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  11/30/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
:
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE :
FOR THE REGISTERED HOLDERS OF WACHOVIA :
BANK COMMERCIAL MORTGAGE TRUST, :
COMMERCIAL MORTGAGE PASS-THROUGH :
CERTIFICATES, SERIES 2006-C28, ACTING BY AND :
THROUGH ITS SPECIAL SERVICER CWCAPITAL :
ASSET MANAGEMENT LLC, :
:
                                  Plaintiff, :
:
                    -v- :
:
DEXIA REAL ESTATE CAPITAL MARKETS f/k/a/ :
ARTESIA MORTGAGE CAPITAL CORPORATION, :
:
                                  Defendant. :
:
------------------------------------------------------------------------X

12 Civ. 9412 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff—whom the Court refers to as "the Trust"—brought this breach of contract

action against defendant Dexia Real Estate Capital Markets ("Dexia").  In an earlier Opinion and

Order, issued August 12, 2016, the Court held that Dexia, having prevailed in this litigation, was

entitled to an award of attorneys' fees. See Dkt. 150 ("Fees Decision").  This decision addresses

remaining issues in the case relating to such fees, as well as to costs, expenses, and prejudgment

interest.  For the following reasons, the Court holds that (1) the Trust is not entitled to an offset

against the Court's award of attorneys' fees to Dexia; (2) Dexia is entitled to reasonable

attorneys' fees and costs in a total amount of $1,821,227.88; and (3) Dexia is not entitled to

prejudgment interest on this award.

I.      **Background**

        A.      **Factual Background**[1]

        The Court assumes familiarity with the Fees Decision, and recounts here only those facts

necessary to this decision.

        In September 2006, Dexia made a $13,800,000 commercial mortgage loan (the "Loan")

to MP Operating, LLC and Annex Operating, LLC (collectively, the "Borrowers").  The Loan

was secured by a mortgage against a commercial property in Minnesota (the "Property").  In

connection with the Loan, four individuals (the "Guarantors") who were associated with the

Borrowers agreed to guarantee the loan (the "Guaranty").  If certain financial requirements were

not met, the Guarantors were to be personally liable, under Section 2(b)(iv) of the Guaranty (the

"Full Recourse Provision"), for the full amount of the Loan.

        On October 1, 2006, Dexia sold the Loan to Wachovia Commercial Mortgage Securities,

Inc. ("Wachovia"), pursuant to a Mortgage Loan Purchase Agreement ("MLPA").  *See* Dkt. 147,

Ex. A ("MLPA").  On that same day, Dexia and Wachovia entered into a Pooling and Servicing

Agreement ("PSA") to govern the administration of the Trust, into which the Loan (among

others) was to be deposited.  Pursuant to the PSA, Wachovia assigned to the Trust all of its

"rights, title and interest" in the Loan, as well as its "rights" under Sections 2, 3, 9, 10, 11, 12,

13, 14, 16, 17, 18 and 19 of the MLPA.  *See* Dkt. 131, Ex. 10 ("PSA"), at § 2.01(a).  Relevant to

---

[1] The following facts are drawn from Judge Scheindlin's summary judgment decision in favor of
the Trust, *see U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, No. 12 Civ. 9412 (SAS),
2014 WL 3368670 (S.D.N.Y. July 9, 2014) ("*Dexia I*"), the Second Circuit's reversal of that
decision on statute-of-limitations grounds, *see* 2016 WL 1042090 (2d Cir. Mar. 18, 2016)
(summary order) ("*Dexia II*"), and the materials cited therein, and the Fees Decision.  Except
where specifically quoted or referenced, no further citations to these sources will be made.

the dispute at hand, section 16 of the MLPA provided for the shifting of attorneys' fees to the prevailing party in any action commenced between Dexia and Wachovia regarding the MLPA.[2]

In the MLPA, Dexia made certain representations and warranties regarding the loans that were sold to Wachovia and ultimately deposited into the Trust.  Dexia represented, *inter alia*, that the underlying loan documents were enforceable and were not subject to any valid offset, defense, counterclaim, abatement, or right to rescission.

In January 2010, the Loan went into default.  In September 2010, the Trust filed suit in Stearns County, Minnesota, against the Borrowers and Guarantors ("Stearns County Litigation"). The Guarantors, as an affirmative defense, maintained that the Guaranty that they had executed did not, in fact, contain the Full Recourse Provision, but a more limited provision.  The Guarantors contended that Dexia's closing counsel, Best & Flanagan, had attached the signature page from the limited guaranty to the version containing the Full Recourse Provision without their consent.

After discovery closed, the Guarantors moved for summary judgment.  In July 2011, the Stearns County court held that the Full Recourse Provision of the Guaranty was unenforceable. The Trust appealed, but dismissed the appeal with prejudice before any briefs were filed.

---

[2] Section 16 of the MLPA provides:

> If any legal action, suit or proceeding is commenced between the Seller [Dexia] and the Purchaser [Wachovia] regarding their respective rights and obligations under this Agreement, the prevailing party shall be entitled to recover, in addition to damages or other relief, costs and expenses, attorneys' fees and court costs (including, without limitation, expert witness fees). As used herein, the term "prevailing party" shall mean the party which obtains the principal relief it has sought, whether by compromise settlement or judgment.

MLPA § 16.

In August 2012, the Guarantors sued Dexia and Best & Flanagan in Hennepin County, Minnesota for fraud and negligence relating to the swapped signature pages ("Hennepin County Litigation"). Dexia filed a counterclaim for contract reformation. In March 2014, the Hennepin County court granted the Guarantors' motion to dismiss this counterclaim, holding that Dexia was barred from relitigating issues already decided in the Stearns County Litigation. The parties later settled in March 2015. As part of the settlement, Dexia received money from Best & Flanagan.

### B.  Procedural History of This Lawsuit

On September 29, 2011, the Trust wrote to Dexia, asserting that because the Guaranty was unenforceable, Dexia had breached its representations in the MLPA. The Trust asked that Dexia either cure the alleged breach or repurchase the Loan; Dexia refused. On December 27, 2012, the Trust commenced this breach of contract action, Dkt. 1 ("Compl."), which was assigned to Judge Scheindlin.

On January 25, 2013, Dexia filed a motion to dismiss on statute-of-limitations grounds. Dkts. 6–7. Dexia argued that any breach occurred in October 2006—when the Loan was sold to Wachovia—and therefore a lawsuit brought more than six years later was untimely. On June 6, 2013, Judge Scheindlin denied this motion, holding that the Trust's claim did not accrue until the value of the Loan suffered material adverse effects from Dexia's alleged misrepresentations. Dkt. 15, *reported at U.S. Bank Nat. Ass'n v. Dexia Real Estate Capital Markets*, 959 F. Supp. 2d 443 (S.D.N.Y. 2013).

Following discovery, the parties cross-moved for summary judgment. Dkts. 68–89. On July 9, 2014, Judge Scheindlin granted the Trust's motion for summary judgment and denied Dexia's cross-motion. Dkt. 90, *reported at U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, No. 12 Civ. 9412 (SAS), 2014 WL 3368670 (S.D.N.Y. July 9, 2014) ("*Dexia I*"). In

4

pertinent part, Judge Scheindlin held that the Trust's suit was timely, *see id.* at *6, and that Dexia was collaterally estopped from denying its breach of the MLPA because the Stearns County court had found that the Full Recourse Provision was unenforceable. *See id.* at *9. The Trust, invoking section 16 of the MLPA, then sought and was granted attorneys' fees and prejudgment interest. Dkt. 102, *reported at U.S. Bank Nat. Ass'n v. Dexia Real Estate Capital Markets*, No. 12 Civ. 9412 (SAS), 2014 WL 4290642 (S.D.N.Y. Aug. 28, 2014).

Dexia appealed. On March 16, 2016, the Second Circuit reversed and remanded with instructions to grant Dexia's summary judgment motion on statute-of-limitations grounds. *See* Dkt. 118, *reported at U.S. Bank Nat. Ass'n v. Dexia Real Estate Capital Markets*, No. 14 Civ. 2859, 2016 WL 1042090 (2d Cir. Mar. 16, 2016), *as amended* (Mar. 18, 2016) (summary order) ("*Dexia II*"). The Circuit held that the six-year statute of limitations for the Trust's contract claims had begun to run in October 2006, when the MLPA was executed.

On April 11, 2016, this Court, to which this matter was reassigned upon Judge Scheindlin's retirement, granted Dexia's motion for summary judgment, in accordance with the Second Circuit's instructions. Dkt. 123. On April 22, 2016, Dexia moved for attorneys' fees pursuant to section 16 of the MLPA, Dkt. 125. On August 12, 2016, after briefing, Dkts. 126 ("Def. Fees Br."), 130 ("Pl. Fees Br."), 133 ("Def. Fees Rep. Br."), and argument, Dkt. 148, the Court issued the Fees Decision. The Court held that Dexia was entitled to an award of attorneys' fees under the MLPA, but it reserved decision on the issue of the amount of the fee award. The Court directed the parties to propose a schedule for discovery and briefing on the limited issue of whether the Trust was entitled to an offset, against the fee award, for any part of the money Dexia had received when it settled with Best & Flanagan. *See* Fees Decision at 17–18.

On August 26, 2016, the parties submitted a joint letter, Dkt. 151, setting out their respective positions on the necessary discovery and as to a briefing schedule with respect to the issue of an offset to the fee award.  Consistent with the schedule set by the Court, Dkt. 152, on August 29, 2016, the Trust filed a supplemental memorandum of law in support of its position, Dkt. 156 ("Pl. Supp. Br."), and a supporting declaration, Dkt. 157; thereafter, Dexia filed a supplemental memorandum, Dkt. 161 ("Def. Supp. Br."), and a supporting declaration, Dkt. 163; the Trust filed a supplemental reply memorandum, Dkt. 162 ("Pl. Supp. Rep. Br."), and a supporting declaration, Dkt. 165, and Dexia filed a supplemental reply memorandum, Dkt. 164 ("Def. Supp. Rep. Br.").

## II.     Applicable Legal Standards Governing Fees Awards

As the Fees Decision recognized, under New York law,[3] a contract such as the MLPA "that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear."  *Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 551 F. App'x 607, 610 (2d Cir. 2014) (summary order) (quoting *NetJets Aviation, Inc. v. LHC Comms., LLC*, 537 F.3d 168, 175 (2d Cir. 2008)) (internal quotation marks omitted).  Thus, "when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable."  *Diamond D Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992) (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987)) (internal quotation marks omitted).

---

[3] As both parties recognize, both the MLPA and PSA are governed by New York Law.  *See* MLPA § 15; PSA § 11.04.

6

### III.    Discussion

Three questions remain to be resolved with regard to the amount of attorneys' fees owed by the Trust to Dexia in light of the Court's ruling that Dexia, as the prevailing party, is entitled to a fee award.  First, must any part of the money received by Dexia pursuant to its settlement with Best & Flanagan be used to offset the award it is due here, so as to avoid an impermissible "double recovery" by Dexia?  Second, is the amount of fees sought by Dexia in connection with the litigation in this District[4] reasonable?  Third, is Dexia entitled to prejudgment interest on the award of attorneys' fees, and if so, at what rate and starting at what date?  The Court addresses these questions in turn.

### A.    Offset

The main unresolved dispute between the Trust and Dexia, and the focus of their briefs following the Fees Decision, is whether Dexia's fee award should be offset to reflect the payout that Dexia received pursuant to its settlement with its closing counsel, Best & Flanagan, to the extent that payment reflects—or is construed to reflect—attorneys' fees that Dexia incurred in the course of this litigation.[5]

In brief, Dexia had brought counterclaims against Best & Flanagan in the Hennepin County, Minnesota, litigation for legal malpractice and indemnity.  Dexia claimed that Best & Flanagan failed to ensure that the Guarantors executed a full-recourse guaranty, giving rise to exposure to—and litigation with—the Guarantors.  Dexia's counterclaims were settled on April 28, 2015, as part of a broader settlement agreement among Dexia, Best & Flanagan, Best &

---

[4] Dexia is not seeking attorneys' fees incurred in connection with the Minnesota litigation.

[5] Although the Court only directed the parties to brief the issue of offset as it relates to the Best & Flanagan settlement, and not the Lloyds settlement, *see* Fees Decision at 17–18, the foregoing analysis applies equally to both settlements.

Flanagan's malpractice insurer, One Beacon, and the three Guarantors.  Under the settlement agreement, the parties dismissed their claims and released any potential claims they may have had against one another, and Dexia received a $1,135,000 payout.  The settlement agreement did not state what that payout represented, including whether, and if so to what extent, the payout to Dexia compensated Dexia for its attorneys' fees and costs in this (or the Hennepin County) action, as opposed to, for example, the risk of substantive liability to the Guarantors that Dexia then faced.[6]  However, in light of the Second Circuit's later ruling that the Guarantors' claims against Dexia were time-barred, Dexia concedes that the settlement funds it received necessarily functioned to compensate it for litigation fees and costs in the two cases.  *See, e.g.,* Dkt. 153 at 1.

The Trust argues that under New York law, any award against it of attorneys' fees in this case must be offset by the amount of money that Dexia obtained in the Best & Flanagan settlement, to the extent that that payout may be attributed (after the fact) to fees in this case. The Trust claims that this offset is necessary, lest otherwise Dexia receive a "double recovery" of such fees which, the Trust argues, New York law forbids.  Dexia opposes such an offset on multiple grounds, including that it is unsupported by the text of the MLPA and by New York law relating to double recoveries.  Dexia also emphasizes that the settlement does not earmark any part of its payout for attorneys' fees in this litigation, rendering conjectural any allocation of the settlement payout to Dexia's legal fees in this case.  Finally, Dexia notes, even if an offset to the fee award here were theoretically available, its litigation costs for the Hennepin County action would themselves account for nearly all of the settlement amount, making a significant offset factually unjustified.

---

[6] Other provisions of the settlement agreement required Dexia to continue to litigate its statute of limitations defense against the Trust in this case, and addressed different scenarios depending on which party prevailed in this case.

The Court analyzes the Trust's claim for an offset both under the MLPA and under the body of New York substantive law on which it relies.  For the reasons that follow, the Court holds, with Dexia, that the law does not entitle the Trust to an offset to Dexia's fee award, even assuming, *arguendo*, that some part of Dexia's settlement recovery can at this point be fairly understood to compensate Dexia for the attorneys' fees that it incurred in this case.

### 1.     The Text of the MPLA

The Court's analysis begins with the text of the MLPA, which, as the Court held in the Fees Decision, entitles Dexia to an award of attorneys' fees as the prevailing party in this litigation.  The Trust urges the Court to ignore the text of the MLPA as a "red herring," claiming that "[w]hether or not an offset is appropriate is not an issue of contract interpretation" but is exclusively a matter of New York substantive law pertaining to double recoveries.  Pl. Supp. Rep. Br. at 3.  On that question of legal methodology, however, the Trust is wrong.  As reviewed below, the absence of an offset provision in the MLPA—in contrast to other agreements reported in the case law that provide for offsets to damages in the event of indemnification or an insurance recovery by the prevailing party—is germane.  Its absence suggests—consistent with New York law regarding "double recoveries," which does not require such an offset in the circumstances here, *see* pp. 12–15, *infra*—that the parties did not contemplate an offset being available here.

"When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms."  *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011).  Under New York law, contract language is ambiguous if "a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way."  *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008).  The question of whether contract language is ambiguous is for the Court.  *See Compagnie Financiere de CIC et*

9

*de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 158 (2d Cir. 2000). In making that determination, "a court should accord [contractual] language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish." *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990) (alteration and internal quotation marks omitted).

Section 16 of the MLPA provides:

Attorneys Fees. If any legal action, suit or proceeding is commenced between the Seller and the Purchaser regarding their respective rights and obligations under this Agreement, the prevailing party shall be entitled to recover, in addition to damages or other relief, costs and expenses, attorneys' fees and court costs (including, without limitation, expert witness fees). As used herein, the term "prevailing party" shall mean the party which obtains the principal relief it has sought, whether by compromise settlement or judgment.

Notable here, section 16 of the MLPA does not contain any "offset" provision. No part of section 16 provides, for example, that attorneys' fees are recoverable to the prevailing party "to the extent not recovered from any other source" or "net of any recovery from any third party." The absence of such qualifying language is textual evidence that the parties did not intend for there to be such an offset, given that, as Dexia's brief canvasses, such provisions are relatively common in insurance policy contracts, and have generally been enforced by courts applying New York law. *See, e.g.*, *In re Metro. Prop. & Cas. Ins. Co.*, 247 A.D.2d 921, 922 (N.Y. App. Div. 4th Dep't 1998); *Valente v. Prudential Prop. & Cas. Ins. Co.*, 571 N.E.2d 71, 71 (N.Y. 1991). It is fair, too, to assign weight to the absence of an offset provision, given that the parties that negotiated the MLPA—Dexia and Wachovia—were "sophisticated, counseled business people negotiating at arm's length," as was the Trust that succeeded to Wachovia's rights under it. *Wallace v. 600 Partners Co.*, 658 N.E.2d 715, 715 (N.Y. 1995).

New York courts, examining whether an offset is appropriate against contract-based damage awards have treated the issue as one of contract interpretation, and have consistently held that an offset against an award is appropriate where the contract at issue provides for such an offset.  For example, in *Hager v. Allstate Ins. Co.*, 636 N.Y.S.2d 586, 586 (Sup. Ct. 1995), the court held that under New York law, "the only offsets that respondent would be entitled to are those which are included in the contract of insurance, and which are enforceable as a matter of law."  Similarly, in *Nelson v. Travelers Prop. Cas. Companies*, 19 Misc. 3d 1129(A), 866 N.Y.S.2d 93 (Sup. Ct. 2008), the court found that a damages offset was appropriate in that case only because the contract between the parties contained a "clear and unambiguous" provision explicitly authorizing the offset.  And in *Valente*, *supra*, the court held that an offset to contract damages was appropriate "[u]nder [the] circumstances" because '[t]he contract between the parties contains a standard clause which expressly provides for such an 'offset.'"  77 N.Y.2d at 895.  To be sure, none of these cases addresses attorneys' fees specifically, as opposed to other forms of damages.  But in contrast to this persuasive authority, the Trust has not cited—and indeed the Court is unaware of—case law imputing the availability of an offset to a negotiated damages formula where the contract did not provide for such an offset.

In light of this precedent, then, the MLPA's text does not support the Trust's argument that an offset to the fee award to which Dexia is contractually entitled as the prevailing party in this litigation is warranted to the extent that Dexia's settlement with Best & Flanagan, in hindsight, functions to compensate Dexia for its legal fees in this litigation.  On the contrary, inferring the availability of such an offset would be in tension with the plain text of the MLPA.  *Lockheed Martin Corp.*, 639 F.3d at 69.

### 2.   Double Recovery

The Trust argues that, notwithstanding the absence of a contractual basis for an offset, New York law requires that the contractual fee award here be offset to prevent Dexia from obtaining a "double recovery" of the sort that New York case law bars. Pl. Supp. Br. at 12; Pl. Supp. Rep. Br. at 1.  Dexia counters that under the relevant law, "a contractually-mandated award of attorneys' fees may not be offset or reduced by proceeds from a third party source." Def. Supp. Br. at 8.  Dexia's reading of the law is more persuasive.

In arguing that denying an offset here would give rise to a forbidden "double recovery," the Trust primarily relies on two cases.  *Waehner v. Frost*, 770 N.Y.S.2d 596, 598 (Sup. Ct. 2003), the Trust argues, reflects a "longstanding public policy in [New York] that litigants are to be fairly compensated but that duplicative recoveries and windfalls should be avoided," Pl. Supp. Rep. Br. at 1, which, the Trust argues, bars Dexia from gaining a fee award to the extent the Best & Flanagan settlement has functionally compensated it for its fees in this case.  But *Waehner* is far afield.  That case involved a damages offset in a case where a plaintiff sued joint tortfeasors. 770 N.Y.S.2d at 598.  It held that an arbitrator should have used an award paid by one tortfeasor as part of a settlement agreement to offset a damages award against a second tortfeasor meant to compensate the victim for the same injury.  *Id.*  In so holding, the *Waehner* court relied on tort cases which applied a New York doctrine prohibiting duplicative recovery for damages among joint tortfeasors.  *See id.*; *Fisher v. Qualico Contr. Corp.,* 98 N.Y.2d 534, 537 (2002); *Whalen v. Kawasaki Motors Corp.,* 92 N.Y.2d 288, 292 (1998); *Sawtelle v. Waddell & Reed, Inc.,* 304 A.D.2d 103, 116 (1st Dep't 2003).  But that doctrine does not speak to how courts should apply a contractual fee-shifting provision that, unlike others, is silent on potential offsets.  And there are sound reasons why contracting parties might choose not to negotiate for a potential offset to a prevailing party fee award.  For example, they must wish to spare the parties a potentially costly,

burdensome, intrusive and inexact inquiry into how, after-the-fact, to allocate a payout pursuant to a broader settlement that contained no allocation formula. The Trust's bid for an offset here would, in fact, invite just such an inquiry.

Also inapposite is *Inchaustegui v. 666 5th Ave. Ltd. P'ship*, 96 N.Y.2d 111 (2001). In the context of a party whose loss had already been covered by its own insurance policy, the Court of Appeals there stated that "[u]nder settled contract principles, [the prevailing party] is entitled to be placed in as good a position as it would have been had the tenant performed. Its recovery is limited to the loss it actually suffered by reason of the breach." *Id.* at 115–16. By extension, the Trust contends, any award of attorneys' fees to Dexia should be limited to the extent to which Dexia's settlement with Best & Flanagan, viewed in hindsight following the Second Circuit's decision finding the claims against Dexia time-barred, may today be deconstructed as, in part, compensation to Dexia for its fee outlays here. Pl. Supp. Rep. Br. at 2. But New York courts have explicitly limited *Inchaustegui* to cases in which a party has been compensated by its own insurance, "and therefore sustained no loss beyond its out-of-pocket costs." *Murray v. N.Y. City Transit Auth.*, 20 Misc. 3d 5, 8 (2d Dept. 2008). Thus, the Second Department held, *Inchaustegui*'s rationale did not apply where, for example, the defendant sought "to recover legal expenses pursuant to the indemnification provision of the subcontract." *Am. Ref-Fuel Co. of Hempstead v. Res. Recycling, Inc.*, 307 A.D.2d 939, 941, 763 N.Y.S.2d 657 (2003); *see also 515 Ave. I Corp. v. 515 Ave. I Tenants Corp.*, 2010 WL 4904671, at *8 (Sup. Ct. Kings County Dec. 1, 2010) (similarly limiting *Inchaustegui*).

The two cases on which Dexia primarily relies on are more apposite. Both address attempts to offset contractual awards of attorneys' fees. In *Isaacs v. Jefferson Tenants Corp.*, 270 A.D.2d 95, 96 (1st Dep't 2000), for example, the defendant cooperative prevailed on a

breach of contract claim, and was therefore entitled—like Dexia—to attorneys' fees under the

contract at issue.  Like the Trust, the plaintiff in *Isaacs* argued that because the cooperative's

insurer had paid for the cooperative's attorneys' fees, the cooperative's award should be reduced

in order to avoid double recovery.  *Id.*  The First Department held, however, that the plaintiff

"was not entitled to a credit against his counsel fee obligation in the amount of the payment

made to the cooperative by its insurer" because the plaintiff "may not benefit from the

circumstance that the cooperative had an insurance policy to cover its legal costs."  *Id.*

Similarly, in *O'Neill v. 225 E. 73 Owners Corp.*, 748 N.Y.S.2d 255, 256 (1st Dep't, App. Div.,

2002), the First Department held that "plaintiffs were not effectively relieved of their counsel fee

obligation by reason of the payment of those fees by defendant's insurance carrier," and were

thus bound by a provision of their lease agreement with the prevailing defendant to pay its legal

fees.

The Trust attempts to distinguish *Isaacs* and *O'Neill* on the ground that in each of these

cases, the insurer had contractually and common-law subrogation rights, allowing the insurer to

seek reimbursement from its insured following the insured's receipt of the fee award.  But *Isaacs*

and *O'Neill* did not turn on that fact.  Indeed, neither decision addressed subrogation or the right

of the insurer to recoup the prevailing party's attorney's fees.  In declining to offset the award of

attorneys' fees, both cases instead emphasized the need to avoid a windfall for the *losing* party,

freeing it from having to pay the attorneys' fees that it was contractually obliged to pay.  *See*

*Isaacs*, 270 A.D.2d at 96 ("Plaintiff may not benefit from the circumstance that the cooperative

had an insurance policy to cover its legal costs."); *O'Neill*, 298 A.D.2d at 239 ("plaintiffs were

not effectively relieved of their counsel fee obligation by reason of the payment of those fees by

defendant's insurance carrier").  While *Isaacs* and *O'Neill* are factually distinguishable insofar as

14

they address a payment by an insurer, and not by a third-party pursuant to a settlement agreement as is alleged here, the policy concern of *Isaacs* and *O'Neill*—of not giving an unjustified windfall to a party that had contracted to pay the attorneys' fees of its adversary if the adversary prevailed—is equally applicable and relevant here.

To be sure, the Court has not found on-point authority addressing the precise question at hand:  Whether a party that has unconditionally committed to pay its adversary's attorneys' fees if the adversary prevailed may be relieved from this obligation based on a settlement payment to the adversary from a third party which, in hindsight, may be seen as covering some of the same attorneys' fees.  But the weight of New York case law, including *Isaacs* and *O'Neill*, suggests that there is no principle precluding Dexia from exercising its contractual right to demand that the Trust pay its reasonable attorneys' fees.  And the MLPA, which does not contain an offset provision, points in the same direction.  The Court accordingly rejects the Trust's claim that enforcing the prevailing-party attorney's fees provision against it here is inconsistent with New York law regarding double recoveries.  Dexia is, therefore, entitled to payment in full, by the Trust, of Dexia's reasonably-incurred attorneys' fees.[7]

### B.   Reasonableness

The Court next considers whether the fees requested by Dexia are reasonable.  "Under New York law, 'when a contract provides that in the event of litigation the losing party will pay

---

[7] For avoidance of doubt, had the Court found that an offset of the contractual fee award to avoid a double recovery alongside the Best & Flanagan settlement was warranted, the Court would not have offset the fee award by the full amount ($1,135,000) of that settlement, but only by the subset that could not have been applied to other expenses (*i.e.*, the fees and costs that Dexia incurred in the Hennepin County litigation).  Given its holding that no offset is warranted, the Court has no occasion to tabulate this "net" figure, but Dexia represents that the fees and expenses it paid in connection with the Hennepin County litigation would subsume all but $64,794.21 of the $1,135,000.

the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever

amounts have been expended by the prevailing party, so long as those amounts are not

unreasonable.'" *Antidote Int'l Films, Inc. v. Bloomsbury Pub., PLC*, 496 F. Supp. 2d 362, 364

(S.D.N.Y. 2007) (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263

(2d Cir. 1987)). "A variety of factors informs the court's determination of whether a requested

amount of attorneys' fees is reasonable or unreasonable, including the difficulty of the questions

involved; the skill required to handle the problem; the time and labor required; the lawyer's

experience, ability and reputation; the customary fee charged by the Bar for similar services; and

the amount involved." *Id.* (citation omitted). District courts have broad discretion to determine

both the reasonable number of compensable hours and the reasonable hourly rate. *See Hensley v.

Eckerhart*, 461 U.S. 424, 433 (1983). Plaintiffs are to be compensated only for "hours

reasonably expended on the litigation," and not for hours "that are excessive, redundant, or

otherwise unnecessary." *Id.* at 433–34.

In its application for fees and costs, Dexia seeks a total of $1,893,952.88, as follows:

- $1,581,636.60 in fees for attorneys and support staff (reflecting $501,033.35 for the
  work of the Morgan Lewis law firm, and $1,080,603.25 for the work of the Polsinelli
  law firm[8]), *see* Dkt. 133, Ex. A, and;

- $314,746.28 in costs ($25,010.61 for Morgan Lewis, $85,276.47 for Polsinelli, and
  $202,029.20 for Dexia[9]), *see id.*

---

[8] This reflects a $13,775.50 reduction from the fees of Polsinelli that Dexia paid; Dexia made this reduction in response to objections by the Trust. *See* Def. Fees Rep. Br. at 9 n.9.

[9] This reflects a $2,704.80 reduction to Dexia's original requests, reflecting the fact that the Second Circuit has separately ordered such costs taxed in Dexia's favor. *See* Def. Fees Rep. Br. at 9 n.9.

The Trust objects to Dexia's overall requested award of $1,893,952.88 on three grounds: that (1) Dexia's appellate fees and costs, incurred in connection with its successful appeal to the Second Circuit of Judge Scheindlin's summary ruling, are not covered by the fee-shifting provision in the MLPA; (2) Dexia cannot recover "pre-litigation fees," *i.e.*, fees incurred before the Trust's complaint was filed; and (3) fees attributable to Dexia's switch of counsel, from Polsinelli to Morgan Lewis, were not reasonably incurred.  The Court addresses each objection in turn.

### 1.    Hourly rates

Before turning to these specific objections, the Court briefly addresses the reasonableness of the hourly rates charged by counsel and paid by Dexia.  The attorneys from Polsinelli, which handled the proceedings in the district court, and Morgan Lewis, which largely handled the proceedings on appeal, together billed at rates ranging from $250 per hour to $1,055 per hour. *See* Def. Fees Br. at 16.  The Trust has not challenged the reasonableness of any attorney's billing rate.  And on its independent review, the Court agrees that the billing rates that Dexia's attorneys charged were reasonable.  As the Court has noted in approving billing rates in another complex commercial litigation, "partner billing rates in excess of $1,000 an hour[] are by now not uncommon in the context of complex commercial litigation." *See Themis Capital v. Democratic Republic of Congo*, No. 09 Civ. 1652 (PAE), 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014).  And this case involved difficult questions, calling for skillful work by able and experienced counsel. *See Antidote Int'l Films*, 496 F. Supp. 2d at 364.  That Dexia's overall attorneys' fees amount to less than 10% of the now-vacated judgment against it further supports that the fees incurred were reasonable, as does its attorneys' ultimate success, at the Second Circuit, in vacating that judgment.

Furthermore, although not necessary to the Court's determination, it is significant, as a form of "market confirmation" as to their reasonableness, that Dexia—a sophisticated consumer

17

of legal services—agreed to both Polsinelli's and Morgan Lewis's fees in an "arms-length" transaction, and paid the invoices for those fees in full. *See* Def. Fees Br. at 18; *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008) ("The reasonable hourly rate is the rate a paying client would be willing to pay."); *Anderson v. YARP Rest., Inc.*, No. 94 Civ. 7543 (CSH) (RLE), 1997 WL 47785, at *2 (S.D.N.Y. Feb. 6, 1997) ("The best evidence of a reasonable fee rate is the amount actually charged by counsel[.]") (citations omitted). Accordingly, the Court finds the rates that Dexia asks the Trust to pay entirely reasonable.

### 2.   Appeal Fees

The Trust next argues that Dexia may not recover its fees for appellate work because "Section 16 of the MLPA does not state that fees are allowed through an appeal." Pl. Fees Br. at 17. That argument is clearly wrong. Section 16 of the MLPA covers legal fees incurred in *any* "legal action, suit or proceeding." An appeal, being a stage or proceeding in a legal action or lawsuit, meets each part of this definition. And New York law is clear on this point: Attorneys' fees for appellate work are authorized by a statute or contractual provision that awards attorneys' fees to the prevailing party in an "action" even if the language of the statute or contract does not explicitly authorize fees in connection with an appeal. *See Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 316 (2d Cir. 1990).

### 3.   Pre-litigation fees

The Trust next objects to paying Dexia's legal fees for the period between October 3, 2011, when Dexia received the Trust's repurchase demand letter, and December 27, 2012, when the Trust filed its complaint. Pl. Fees Br. at 16. Citing no case law for this position, the Trust simply asserts that "[n]one of these fees are properly recoverable." *Id.* That assertion, too, is baseless. Courts in this district have clearly held that where—as here—a party "was justified in

retaining counsel when a lawsuit was reasonably anticipated (indeed, imminent)" and that party is entitled to an award of attorneys' fees, that party "should be reimbursed for its attorneys' fees for reasonable work done in advance of the actual commencement of suit." *See, e.g.*, *Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp.*, No. 04 Civ. 3854 (LAK) (AJP), 2008 WL 4833025, at *8 (S.D.N.Y. Nov. 3, 2008). The Trust's argument is also in conflict with its own earlier fee application: When the Trust sought an award of attorneys' fees from Dexia at a time when the Trust appeared to have prevailed, it sought and—was ultimately awarded—its pre-litigation costs. *See* Dkt. 92 ¶ 6. Both on the merits and as a matter of judicial estoppel, the Trust's claim that Dexia may not recover pre-litigation costs therefore fails. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

### 4.  Morgan Lewis appeal fees

Finally, the Trust argues that it is unreasonable to ask it to pay Dexia the $501,033.35 that Dexia paid Morgan Lewis for handling the appeal in this case, because Dexia "made exactly the same legal arguments on appeal that it advanced in the trial." Pl. Fees Br. at 18. The Trust argues that Morgan Lewis benefited from the substantial work that Polsinelli had already done, and that Morgan Lewis's work was limited to "drafting two briefs, submitting five letters, and oral argument," *id.*, not meriting the payment of fees on this scale. *Id.* Dexia counters that even if its fees increased by virtue of a change of counsel, it was nevertheless "entitled to conclude that it needed a fresh set of eyes and new voice for the appeal." Def. Fees Rep. Br. at 9.

On this point, both parties' positions have merit. Dexia was entitled to replace Polsinelli with Morgan Lewis, and parties that have lost below commonly seek out the fresh perspective of new counsel on appeal. Dexia was, further, at liberty to retain a more expensive firm on appeal. And the Trust's attempts to depict as limited the volume of work necessary for Dexia to ably litigate the appeal are quite unpersuasive. Dexia's success on appeal—obtaining wholesale

reversal and instatement of judgment its favor—emphatically validate its approach to appellate staffing and presentation.

At the same time, a change in counsel invariably breeds inefficiencies, as new counsel is required to get up to speed with the relevant facts, record, law, and procedural history.  And "fees incurred because a change in counsel requires new counsel to 'get up to speed' are not appropriately passed on to a defendant." *Entral Grp. Int'l, L.L.C. v. N.Y. One Cafe Inc.*, No. 05-CV-1655 (CPS), 2007 WL 869587, at \*10 (E.D.N.Y. Mar. 20, 2007); *see also Lunday v. City of Albany*, 42 F.3d 131, 135 (2d Cir. 1994).  In recognition of these inefficiencies, Dexia has rightly not sought to pass along to the Trust the fees paid to the Polsinelli firm in connection with the appeal, which presumably consisted largely of work on the transition or on review of Morgan Lewis' submissions.  But Morgan Lewis, too, no doubt devoted more work to getting up to speed for the appeal than would have been necessary had it been trial counsel.  And, on its application for payment by the Trust of its attorneys' fees, Dexia has not written off any of Morgan Lewis's fees, including those allocated to cover the process of getting up to speed.  A reduction in Dexia's fees is thus warranted, to the extent that these fees reflected work by Morgan Lewis as new counsel to "get up the learning curve," as such work, while reasonably commissioned, is not reasonably passed along to an adversary.  The Court—drawing on its familiarity with this litigation, its review of the record, and its pre-judicial experience handling appellate matters, including as successor counsel retained to pursue appeals of adverse district court outcomes—therefore reduces the portion of Dexia's fees award attributable to Morgan Lewis's legal work by 15%, from $501,033.35 to $425,878.35.

In sum, therefore, the total amount of attorneys' fees and costs that the Court finds reasonable to award to Dexia pursuant to the Fees Decision is $1,821,227.88.

### C.      Prejudgment Interest

Dexia, finally, seeks prejudgment interest on its award of attorneys' fees.  In support, Dexia relies on CPLR § 5001(a) which provides, in pertinent part, that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract."  But Dexia's bid for prejudgment interest here on the award to it of attorneys' fees is not supported by the plain language of that provision, because the sum awarded Dexia is not on account of "*of a breach of performance*," CPLR § 5001(a) (emphasis added).  The Court has not ordered the Trust to pay Dexia's attorneys' fees because the Trust breached the parties' agreement; the Court instead has done so pursuant to a provision of that agreement that provides for the payment of such an award to a prevailing party.  Dexia has not alleged that the Trust, which filed this action against Dexia based on *its* (Dexia's) alleged breach of contract, has itself breached the MLPA.

Dexia cites cases where courts in this district have awarded prejudgment interest on an award of attorneys' fees, including some citing CPLR 5001(a).[10]  But none, or any other case found by the Court, awarded prejudgment interest based on an award of attorneys' fees to a prevailing party where the prevailing party neither (1) established a breach of contract by its adversary or (2) identified a contract provision providing for prejudgment interest on such an award.[11]

---

[10] *See* Dkt. 126 at 23; *see, e.g.*, *Carco Grp., Inc. v. Maconachy*, 718 F.3d 72, 88 (2d Cir. 2013) (""Although [CPLR] § 5001 does not explicitly mention attorneys' fees, Appellate Division courts have cited to § 5001 in approving or otherwise discussing an award of interest on contract-based attorneys' fees."); *Centennial Contractors Enters. v. East New York Renovation Corp.,* 79 A.D.3d 690, 693 (2d Dep't 2010); *Miller Realty Associates v. Amendola,* 51 A.D.3d 987, 990 (2d Dep't 2008); *Solow Management Corp. v. Tanger,* 19 A.D.3d 225, 226–27 (1st Dep't 2005).

[11] Dexia claims that *Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp.,* No. 04 Civ. 3854 (LAK) (AJP), 2008 WL 4833025 (S.D.N.Y. Nov. 3, 2008), supports it because the contract provision at issue did not specifically authorize prejudgment interest on attorneys' fees. But a provision there authorized an award of judgment interest to either party should that

Because the Court finds no legal basis for awarding prejudgment interest to Dexia on its

award of attorneys' fees, the Court denies Dexia's application for such prejudgment interest.

## CONCLUSION

For the foregoing reasons, the Court holds that Dexia is entitled to an award of attorneys'

fees under Section 16 of the MLPA in the amount of $1,821,227.88, but that Dexia is not entitled

to prejudgment interest on this award.  The Court respectfully directs the Clerk of Court to close

this case.

SO ORDERED.

_Paul A. Engelmayer_
Paul A. Engelmayer
United States District Judge

Dated: November 30, 2016
       New York, New York

---

party prevail, which the Court read as sufficient clear to have that effect.  *See id.* at *11
("[A]lthough [the contractual provision] does not explicitly refer to the prevailing party's
entitlement to pre-judgment interest on attorneys' fees, this Court concludes that any other
interpretation of the [provision] makes little sense.. . . [The] prejudgment interest provision must
entitle a prevailing party to pre-judgment interest on attorneys' fees or else it is mere
surplusage.").  The MLPA contains no such provision here.